318 S.E.2d 622

**William S. GARCELON**

v.

**Phyllis RUTLEDGE, Clerk of the Circuit Court of Kanawha County, and in her Capacity as Chairperson of the Board of Ballot Commissioners of Kanawha County; and A. James Manchin, Secretary of State for the State of West Virginia.**

No. 16301.

Supreme Court of Appeals of West Virginia.

Decided July 11, 1984.

---

Michael Kelly, Charleston, for appellant.

James Stuckey, Pros. Atty., Charleston, for appellees.

McGRAW, Justice:

The petitioner, William S. Garcelon, brought this original proceeding in mandamus seeking to compel Phyllis Rutledge, Chairperson of the Board of Ballot Commissioners of Kanawha County, to place his name on the primary election ballot as a candidate for the office of magistrate, and to compel A. James Manchin, Secretary of State for the State of West Virginia, to promulgate regulations defining the term "impecunious candidate" for purposes of determining when filing fees for admission to the ballot must be waived.

Garcelon's petition was filed with this Court on April 17, 1984. Two days later, a rule to show cause was granted, made returnable on April 24, 1984. Because of the imminency of the primary election, as well as the clarity of the petitioner's right to the relief sought, we issued an order on April 24, 1984, directing respondent Rutledge to place Garcelon's name on the ballot as a candidate for nomination to the office of magistrate. We reserved ruling, however, on Garcelon's prayer for relief against respondent Manchin for decision in an opinion to follow. As noted in *West Virginia Libertarian Party v. Manchin*, 165 W.Va. 206, 270 S.E.2d 634, 637 (1980), "This was in accordance with our prior practice where time considerations preclude the preparation of a full opinion. *See State ex rel. Bromelow v. Daniel*, 163 W.Va. 532, 258 S.E.2d 119 n. 1 (1979); *State ex rel. Brewer v. Wilson*, 151 W.Va. 113, 150 S.E.2d 592 (1966); *State ex rel. Cline v. Hatfield*, 145 W.Va. 611, 116 S.E.2d 703 (1960); *State ex rel. Duke v. O'Brien*, 145 W.Va. 600, 117 S.E.2d 353 (1960)."

In Syllabus Point 1 of *West Virginia Libertarian Party v. Manchin, supra,* this Court held that, "The failure to provide a reasonable alternative to filing fees for impecunious candidates to obtain access to the ballot renders the filing fee requirement of W.Va.Code, 3–5–8, unconstitutional as to such candidates." In response to this decision, respondent Manchin sent an election advisory to all circuit clerks, county clerks, county commissioners, and election officials in West Virginia on February 15, 1984, which stated:

It is now the policy that it is sufficient that a potential candidate *file* a financial hardship statement, under oath, with the circuit clerk, for his name to be placed on the ballot. Therefore, if a person otherwise qualified files a financial hardship

affidavit declaring himself to be legally entitled to ballot access without the payment of a filing fee, that person's name should be placed on the ballot. Then the prosecuting attorney should be involved if it is later determined that the person comitted the crime of false swearing on the affidavit.

On March 31, 1984, Garcelon went to the office of the Circuit Clerk of Kanawha County to file a candidate's certificate of announcement for nomination to the office of magistrate on the Democratic Party ticket in the primary election. He represented that he was unemployed and unable to pay the required filing fee and requested that its payment be waived. He completed a "Financial Affidavit In Support of a Declaration of Candidacy for Elective Office Without Payment of Filing Fee" supplied by the circuit clerk's office which detailed his financial circumstances. After being interrogated by the Prosecuting Attorney of Kanawha County at the request of respondent Rutledge concerning his financial circumstances, Garcelon's certificate was refused because, in the opinion of the prosecuting attorney, the term "impecunious," as used in *West Virginia Libertarian Party v. Manchin, supra,* meant "penniless," and, again in the opinion of the prosecuting attorney, Garcelon was not "penniless."

■ It is abundantly clear from even the most cursory review of the Secretary of State's election advisory that it is the filing of a financial hardship statement which triggers the duty to place a qualified candidate's name on the ballot, and not the approval of the prosecuting attorney. In fact, prosecuting attorney involvement can take place under the advisory only after the prospective candidate's name has been placed on the ballot. Because Garcelon complied fully with the requirements established by the Secretary of State in his election advisory, we concluded that he had a clear legal right to have his name placed on the ballot, and therefore directed respondent Rutledge to comply accordingly.

In addition to Garcelon's desire to be included on the ballot as a candidate for magistrate, he also contends that respon-

dent Manchin's failure to promulgate regulations defining the term "impecunious," as it applied to candidates seeking waiver of filing fees, constitutes a denial of due process. Although respondent Manchin's election advisory does not contain the term "impecunious," it directly refers to the decision in *West Virginia Libertarian Party* as the basis for its formulation. Therefore, by implication, the "financial hardship statement" referred to in respondent Manchin's election advisory necessarily includes an element of impecuniousness, although the advisory, on its face, leaves to the potential candidate, for self-determination, the issue of whether this criterion is met.

■ This Court has frequently recognized that the right to become a candidate for public office is a fundamental right. *See Marra v. Zink,* 163 W.Va. 400, 256 S.E.2d 581, 584 (1979); Syl. pt. 1, *State ex rel. Piccirillo v. City of Follansbee,* 160 W.Va. 329, 233 S.E.2d 419 (1977); *State ex rel. Maloney v. McCartney,* 159 W.Va. 513, 223 S.E.2d 607, 611 (1976); *State ex rel. Brewer v. Wilson,* 151 W.Va. 113, 121, 150 S.E.2d 592, 597 (1966). One aspect of this fundamental right is its entitlement to protection under the concepts of freedom of expression and freedom of association inherent in our federal and state constitutions. *See State ex rel. Piccirillo v. City of Follansbee,* 160 W.Va. at 334, 233 S.E.2d at 423.

■ A doctrine which has emerged as a tool for protecting the exercise of expression and association rights has evolved from a fundamental principle of procedural due process. As a matter of basic procedural due process, a law is void on its face if it is so vague that persons "of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926); *see also Gooden v. Board of Appeals of the West Virginia Department of Public Safety,* 160 W.Va. 318, 323, 234 S.E.2d 893, 896 (1977); *State v. Flinn,* 158 W.Va. 111, 117, 208 S.E.2d 538, 542 (1974). There are primarily two reasons for this rule. First, "[v]ague laws

may trap the innocent by not providing a fair warning." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222, 227 (1972). Second, "if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them." *Grayned*, 408 U.S. at 108, 92 S.Ct. at 2299, 33 L.Ed.2d at 227, *see also Papachristou v. City of Jacksonville*, 405 U.S. 156, 170, 92 S.Ct. 839, 847, 31 L.Ed.2d 110, 120 (1972).

Although both of these concerns are equally applicable to the regulation of expression and association, an additional consideration is raised in the free speech context which creates a heightened need for specificity. Because ambiguity in the regulation of speech may inhibit citizens from fully exercising their fundamental constitutional rights by causing them to " 'steer far wider of the unlawful zone,' *Speiser v. Randall*, 357 U.S. 513, 526, 78 S.Ct. 1332, 1342, 2 L.Ed.2d 1460, 1473 (1958), than if the boundaries of the forbidden areas were clearly marked," *Baggett v. Bullitt*, 377 U.S. 360, 372, 84 S.Ct. 1316, 1323, 12 L.Ed.2d 377, 385 (1964), the vagueness doctrine "demands a greater degree of specificity" in the free speech context than in other contexts. *See Smith v. Goguen*, 415 U.S. 566, 573, 94 S.Ct. 1242, 1247, 39 L.Ed.2d 605, 612 (1974); *see also Ashton v. Kentucky*, 384 U.S. 195, 200–01, 86 S.Ct. 1407, 1410, 16 L.Ed.2d 469, 472–73 (1966); *Cantwell v. Connecticut*, 310 U.S. 296, 311, 60 S.Ct. 900, 906, 84 L.Ed. 1213, 1221 (1940). Similarly, as the United States Supreme Court stated in *NAACP v. Button*, 371 U.S. 415, 433, 83 S.Ct. 328, 338, 9 L.Ed.2d 405, 418 (1963): "Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." To minimize the potential "chilling effect" of regulations governing the exercise of rights guaranteed under constitutional free speech provisions, those regulations must be both narrowly and clearly drawn.

The fundamental flaw in respondent Manchin's election advisory is its failure to define the phrase "legally entitled to ballot access without the payment of a filing fee." As previously noted, this apparently refers to our decision in *West Virginia Libertarian Party*, where we held that "some alternative mode of gaining access to the ballot must be provided" to "impecunious" candidates. 165 W.Va. 212–213, 270 S.E.2d at 639. Respondent Manchin, however, has failed to develop any formula for determining when a candidate is "impecunious," apparently leaving the issue for jury determination in the context of a criminal prosecution for false swearing. This total absence of any criteria for determining when potential candidates qualify for the waiver of filing fees leaves persons of common intelligence who aspire to public service to necessarily guess as to whether they are "legally entitled to ballot access without the payment of a filing fee." Additionally, it is not difficult to imagine that potential candidates for public office might feel somewhat chilled at the prospect of being prosecuted for false swearing given the uncertainty surrounding the definition of "impecunious." We therefore hold that the lack of any criteria for determining when potential candidates qualify for the waiver of filing fees renders an election advisory which governs such waivers unconstitutionally vague.

West Virginia Code § 3–1A–6 (1979 Replacement Vol.) provides that "The secretary of state shall be the chief election official of the State." This statute further provides that, "He shall have authority ... to make, amend and rescind such rules, regulations and orders as may be necessary to carry out the policy of the legislature, as contained in this chapter." One of the specific duties with which the secretary of state is charged is the collection of filing fees under West Virginia Code § 3–5–8 (1979 Replacement Vol.). As previously noted, under our decision in *West Virginia Libertarian Party*, filing fees may not be collected from impecunious candidates unless an alternative method of gaining access to the ballot is provided for those candidates. Although we recognize the difficulty in defining the term "impecunious," we also note the availability of other alternative methods of ballot access which would permit respondent Manchin to comply with his duties as chief election official

and with our mandate in *West Virginia Libertarian Party.*

Both the United States Supreme Court in *Lubin v. Panish,* 415 U.S. 709, 718–19, 94 S.Ct. 1315, 1321, 39 L.Ed.2d 702, 710 (1974), and this Court in *West Virginia Libertarian Party,* 165 W.Va. at 212, 270 S.E.2d at 639, recognized that nominating petitions provide an attractive alternative to filing fees that advance and protect many of the interests that filing fees are ostensibly designed to advance and protect. *See also* Comment, *The Constitutionality of Filing Fees for Political Candidates in Primary Elections: An Arkansas Analysis,* 30 ARK.L.REV. 49, 59 (1976); Comment, *Developments—Election Law,* 88 HARV.L. REV. 1111, 1148 (1975); Comment, *Constitutional Law: Indigency on the Ballot,* 26 U.FLA.L.REV. 886, 891–92 (1974); Comment, *Constitutional Law—State May Not Require Filing Fee From Indigent Candidate as a Prerequisite to Ballot Placement,* 50 WASH.L.REV. 209, 226 (1974); Comment, *The Constitutionality of Qualifying Fees for Political Candidates,* 120 U.PA.L.REV. 109, 128–30 (1971). In recognition of the efficacy of this alternative, several states have enacted election laws which provide for the submission of nominating petitions as a substitute for the payment of filing fees. *See, e.g.,* CAL. ELECTIONS CODE § 6555 (1977 & 1984 Supp.); DEL.CODE ANN. tit. 15, § 3106(g) (1981); FLA.STAT.ANN. § 99.095 (1982); HAWAII REV.STAT. § 12–6(e) (1983 Supp.); KAN.STAT.ANN. § 25–205 (1981); LA.REV.STAT.ANN. § 18:465 (1979); MINN.STAT.ANN. § 204B.11 (1984 Supp.); MO.ANN.STAT. § 115.357 (Vernon 1984 Supp.); MONT.CODE ANN. § 13–10–203 (1983); N.C.GEN.STAT. § 163.107.1 (1982); OKLA.STAT. tit. 26, § 5–112 (1983 Supp.); TEX.STAT.ANN. art. 13.08(d) (Vernon 1984 Supp.). Although not in the context of a substitute for the filing fee requirement, our own election law provides for the utilization of nominating petitions in cer-

tain circumstances. *See* West Virginia Code § 3–5–23 (1979 Replacement Vol.).

In the absence of legislative action in response to our decision in *West Virginia Libertarian Party,* respondent Manchin, recognizing his duty as our chief election official, provided an interim method of ballot access to those candidates who could not afford to pay the required filing fees. Unfortunately, the formulation of the method chosen is unconstitutionally vague because it lacks any criteria for determining impecuniousness. However, we do not foreclose respondent Manchin from adopting new standards.[*]

Accordingly, we granted a writ of mandamus compelling respondent Rutledge to place the name of the petitioner upon the ballot to be used in Kanawha County in the primary election held on June 5, 1984 on the Democratic Party ticket as a candidate for nomination to the office of Magistrate, and, we grant a writ of mandamus invalidating respondent Manchin's election advisory which governs the waiver of filing fees under West Virginia Code § 3–5–8 (1979 Replacement Vol.) as unconstitutionally vague.

Writ granted.

---

[*] Given the problems associated with the affidavit approach to ballot access, particularly the chilling effect of potential prosecution for false swearing, as well as the difficulty in defining the concept of impecuniousness, we believe that the nominating petition alternative is a more efficacious method of providing ballot access to those persons who are unable to pay the required filing fee. The Legislature's failure to act in this area leaves open the question of whether respondent Manchin as chief election official may promulgate rules and regulations in this area. This latter issue, however, is not presented in this case.