333 S.E.2d 817

**STATE of West Virginia**

v.

**Hillary C. THORNE.**

No. 16465.

Supreme Court of Appeals of
West Virginia.

Submitted April 30, 1985.
Decided July 9, 1985.
Dissenting Opinion Aug. 7, 1985.

George A. Stolze, Huntington, for appellant.

Andrew Lopez, Asst. Atty. Gen., Charleston, for appellee.

BROTHERTON, Justice:

Hillary Thorne, the appellant, is a civil rights activist and former Marshall University student. He appeals a judgment of the Circuit Court of Cabell County, which found him guilty of making phone calls with the intent to harass, in violation of West Virginia Code § 61–8–16(a)(4) (1984).

The problems between Mr. Thorne and Marshall University are not of recent origin. In 1979, Mr. Thorne, an activist against apartheid in South Africa, sued Marshall University for not allowing him access to its library because of his activities. An out-of-court settlement gave Mr. Thorne damages and access to the library.

After the law suit, Mr. Thorne enrolled in Marshall as a student. His academic performance was poor. He received a "C" in one course and flunked the remainder of his classes. His discipline record was equally poor, with several reports of disrupting classes and a report of a scuffle with another student over the viewing of a television program. In light of his performance, Marshall suspended Mr. Thorne, and when he tried to enroll in classes the next semester, he was denied admission. He tried again the following semester, again without success. Eventually, the suspension was the impetus for the series of phone calls to Marshall that gave rise to this case.

Each phone call started out in a civil manner. However, at some point each turned unpleasant. One of Mr. Thorne's favorite subjects was Dr. Robert Hayes,

former President of Marshall University, who had just resigned. He referred to Dr. Hayes as "the head hog," and stated that the "rest of the little piggies would get it." Dr. Nell Bailey, Dean of Student Affairs, testified that she was called "a bigot, a racist pig." Her secretary, Phyllis Caldwell, testified that the defendant "referred to Dr. Hayes, who has been barbecued, and for the drippings, they're going to fry the little piggies who have been left behind." Although these and other witnesses explained the text of only four calls, they testified to receiving numerous calls of a similar nature from Mr. Thorne.

Mr. Thorne was indicted by a Cabell County grand jury in September, 1983, for unlawfully making repeated phone calls to persons at Marshall University with the intent to harass. At a one-day jury trial on December 1, 1983, the State called five witnesses who testified to the above facts. Mr. Thorne testified in his own defense. At the trial's conclusion, the jury found Mr. Thorne guilty. He now appeals to this Court, citing three principal errors: (1) that W.Va.Code § 61–8–16(a)(4) (1984), dealing with harassing phone calls, is overbroad and unconstitutional; (2) that the court should have directed the jury's verdict at the conclusion of the State evidence; and (3) that the trial judge should have recused himself.

I.

■ Freedom of speech is one of our most cherished liberties, and in a free society it must be strongly defended. Nevertheless, in an orderly society there must be some limits to free speech. To achieve order, the legislature may properly limit certain activities such as falsely shouting fire in a crowded theater,[1] announcing the sailing date of military transports or the number and location of troops,[2] and, of greater relevance, harassing others over a telephone.[3]

1. *Schenck v. United States,* 249 U.S. 47, 52, 39 S.Ct. 247, 249, 63 L.Ed. 470 (1919).

2. *See Near v. Minnesota,* 283 U.S. 697, 716, 51 S.Ct. 625, 631, 75 L.Ed. 1357, 1367 (1931).

3. See cases cited in n. 6 *infra.*

■ Mr. Thorne does not challenge the legislature's power to regulate this area. Instead, he suggests that W.Va.Code § 61–8–16(a)(4) (1984) is overbroad and prohibits conduct beyond the legitimate governmental interest in preventing harassment.[4] It is true that because of the great importance of free speech, the State's power to regulate "must be so exercised as not, in attaining a permissible end, unduly to infringe the protected freedom." *Cantwell v. Connecticut,* 310 U.S. 296, 304, 60 S.Ct. 900, 903, 84 L.Ed. 1213, 1218 (1940). We do not, however, find undue infringement in this case.

■ Prohibiting harassment is not prohibiting speech, because harassment is not a protected speech. Harassment is not communication, although it may take the form of speech. The statute prohibits only telephone calls made with the intent to harass. Phone calls made with the intent to communicate are not prohibited. Harassment, in this case, thus is not protected merely because it is accomplished using a telephone. " '[I]t has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.' " *Cox v. Louisiana,* 379 U.S. 559, 563, 85 S.Ct. 476, 480, 13 L.Ed.2d 487, 491–92 (1965), *quoting Giboney v. Empire Storage & Ice Co.,* 336 U.S. 490, 502, 69 S.Ct. 684, 691, 93 L.Ed. 834, 843 (1949). Because the statute does not prohibit communicative speech, we find that its proscription is not overbroad. This conclusion is in agreement with other courts that have addressed this issue.[5]

■ This case is of greater concern to us because Marshall University is a State agency. The first amendment right to petition the government for redress extends, of course, to petitioning government agencies. This right, as all first amendment rights, is very jealously protected by the courts. A citizen must have the right to petition his government and to petition it forcefully and repeatedly without any danger of being found guilty of a crime. Because of the importance of this right, it would be very easy to martyr, on the altar of the first amendment, those government employees who have to answer the phone, and say that harassing phone calls to a government agency cannot be prohibited. In so doing, however, we would be doing the State of West Virginia a disservice. A great deal of legitimate government business is done over the phone. If people were allowed to make repeated calls for the sole purpose of harassing government employees, this would tie up the phone for those who wish to reach their government on legitimate business. It would also tie up valuable government staff from doing their jobs. The first amendment does not protect someone interrupting a legitimate government function. *See, e.g., Adderley v. Florida,* 385 U.S. 39, 47–48, 87 S.Ct. 242,

---

4. West Virginia Code § 61–8–16(a)(4) (1984) provides: "It shall be unlawful for any person with intent to harass or abuse another by means of telephone to: ... [M]ake repeated telephone calls, during which conversation ensues, with intent to harass any person at the called number...."

5. Several other states have upheld statutes which proscribed phone calls made with the "intent to harass." *See Donley v. City of Mountain Brook,* 429 So.2d 603, 613 (Ala.Crim.App. 1982); *State v. Hagen,* 27 Ariz.App. 722, 725, 558 P.2d 750, 753 (1976); *State v. Elder,* 382 So.2d 687, 691–93 (Fla.1980); *Constantino v. State,* 243 Ga. 595, 598, 255 S.E.2d 710, 713, *cert. denied,* 444 U.S. 940, 100 S.Ct. 293, 62 L.Ed.2d 306 (1979); *State v. Meunier,* 354 So.2d 535, 537–38 (La.1978); *Caldwell v. State,* 26 Md.App. 94, 105, 337 A.2d 476, 483 (1975); *People v.*

*Smith,* 89 Misc.2d 789, 392 N.Y.S.2d 968, 970, *cert. denied,* 434 U.S. 920, 98 S.Ct. 393, 54 L.Ed.2d 276 (1977); *State v. Zeit,* 22 Or.App. 480, 539 P.2d 1130, 1131 (1975); *State v. Crelly,* 313 N.W.2d 455, 457 (S.D.1981). Similar statutes have been struck down in some states because of the unacceptability of the wording of the statute. *See Bolles v. People,* 189 Colo. 394, 398–99, 541 P.2d 80, 83 (1975) ("annoy or alarm" overbroad); *People v. Klick,* 66 Ill.2d 269, 275, 5 Ill.Dec. 858, 860–61, 362 N.E.2d 329, 331–32 (1977) ("intent to annoy" overbroad); *City of Everett v. Moore,* 37 Wash.App. 862, 683 P.2d 617, 618–20 (1984) ("alarms or seriously annoys" overbroad); *State v. Dronso,* 90 Wis.2d 110, 114–16, 279 N.W.2d 710, 713–14 (1979) ("intent to annoy" overbroad). The wording of each of these statutes, however, is distinguishable from W.Va.Code § 61–8–16(a)(4) (1984).

247, 17 L.Ed.2d 149, 155–56 (1966) (state may prohibit demonstrations on county jail premises).

■ Again, it must be stressed that the statute requires intent to harass. If a citizen intends legitimate communication, he may call and call repeatedly without fear of prosecution. Under this statute he may even call one time totally for the purpose of harassment. Nevertheless, there is a point where legitimate inquiry ends and harassment begins. There comes a point where one cannot repeatedly call a public servant and threaten to fry him in oil.

## II.

■ The appellant also contends that the trial court should have directed a verdict in his favor at the end of the State's case. We disagree. State witnesses Phyllis Caldwell and Steve Hensley each testified to receiving one call. Tina Harness testified to receiving two calls. Dr. Nell Bailey received numerous calls. The State's witnesses testified to being threatened and insulted. Even Mr. Thorne admitted that he may have made references to barbecuing hogs and frying the little pigs in the fat left behind. Viewing the evidence in the light most favorable to the State, we hold that there was sufficient evidence to allow the case to go to a jury.

## III.

■ The appellant's final assignment of error is that the trial judge should have recused himself from the case. We disagree. While it is true that the presiding judge, Alfred E. Ferguson, was a part-time employee at Marshall University at the time of the trial, when this was brought to his attention Judge Ferguson offered to

recuse himself. Instead of accepting the judge's offer, the appellant withdrew his motion that the judge recuse himself and, therefore, waived any error. *See* syl. pt. 17, *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974).

There being no error on the part of the trial court which mandates a reversal, the judgment of the trial court is hereby affirmed.

Affirmed.

MILLER, Chief Justice, dissenting:

My difficulty with the plurality opinion [1] is that it has internal inconsistencies which I am unable to resolve particularly when applied to the facts of this case. On the one hand it initially announces that the "legislature may properly limit certain [speech] activities such as ... harassing others over a telephone," (Plurality op. at 453), and then concludes in the text with this statement: "Again, it must be stressed that the statute requires intent to harass. If a citizen intends legitimate communication, he may call and call repeatedly without fear of prosecution. Under this statute he may even call one time totally for the purpose of harassment." (Plurality op. at 455).

The particular subsection that is the subject of this case states: "It shall be unlawful for any person with intent to harass or abuse another ... to ... [m]ake repeated telephone calls, during which conversation ensues, with intent to harass any person at the called number." W.Va.Code, 61–8–16(a)(4).

If the plurality is saying that where a citizen initially calls intending legitimate communication there can be no prosecution under this subsection, then I would join

---

1. I use the term "plurality" because with the disqualification of Justice Neely, the Court is evenly divided. Under Article VIII, Section 4 of the West Virginia Constitution and W.Va.Code, 58–5–20, which contain identical language, such a decision is not binding authority except in the particular case decided: "No decision rendered by the court shall be considered as binding authority upon any court, except in the particular case decided, unless a majority of the justices of the court concur in such decision." *See*

*Owens-Illinois Glass Co. v. Battle,* 151 W.Va. 655, 154 S.E.2d 854 (1967); *Maynard v. Hammond,* 139 W.Va. 230, 79 S.E.2d 295 (1953). Black's Law Dictionary 1039 (5th ed. 1979) defines a plurality opinion as follows: "An opinion of an appellate court in which more justices join than in any concurring opinion (though not a majority of the court) is a plurality opinion as distinguished from a majority opinion in which a larger number of the justices on the panel join than not."

with them. However, it is difficult to determine what position the plurality takes and certainly with regard to the facts of the present case, it is wrong in my view.

There is no question, and this the plurality concedes, that "[e]ach phone call started out in a civil manner." (Plurality op. at 819). Not only did each call begin in a civil manner but the defendant was making legitimate inquiries about his status as a student, his eligibility to take certain courses, and an accident on the Marshall University campus when his bicycle was destroyed.

It was only when the defendant realized that he was unable to obtain any favorable response that his conversation became abusive. The several State's witnesses all of whom were administrative employees at Marshall could only recall the substance of eight calls made over a three and one-half month period.

The plurality emphasizes some of the language utilized by the defendant, such as referring to the ex-president as "the head hog" and stating that the rest of the little piggies would get it by way of being barbecued or fried. This language cannot be deemed sufficiently shocking to be without First Amendment protection. In *National Association for the Advancement of Colored People v. Claiborne Hardware Co.,* 458 U.S. 886, 927–28, 102 S.Ct. 3409, 3433, 73 L.Ed.2d 1215, 1245, *reh'g denied,* 459 U.S. 898, 103 S.Ct. 199, 74 L.Ed.2d 160 (1982), the United States Supreme Court addressed the issue of whether threatening language used by the leader of a black boycott was sufficient to hold him liable for

unlawful conduct that directly followed his speech.

The Supreme Court unanimously concluded that speech which merely advocates the use of force or violence but which is not directed at inciting violence is protected under the First Amendment.[2] *Accord Pushinsky v. West Virginia Bd. of Law Examiners,* 164 W.Va. 736, 266 S.E.2d 444 (1980). *Claiborne Hardware* cited and summarized in note 71, 458 U.S. at 928, 102 S.Ct. at 3434, 73 L.Ed.2d at 1246, an earlier case which is not without significance:

"In *Watts v. United States,* 394 U.S. 705 [89 S.Ct. 1399, 22 L.Ed.2d 664 (1969)], the petitioner was convicted of willfully making a threat to take the life of the President. During a public rally at the Washington Monument, petitioner stated in a small discussion group:

' "They always holler at us to get an education. And now I have already received my draft classification as 1–A and I have got to report for my physical this Monday coming. I am not going. If they ever make me carry a rifle the first man I want to get in my sights is L.B.J." ' [394 U.S. at 706, 89 S.Ct. at 1401, 22 L.Ed.2d at 666]. This Court summarily reversed. The Court agreed with the petitioner that the statement, taken in context, was 'a kind of very crude offensive method of stating a political opposition to the President.' [394 U.S. at 708, 89 S.Ct. at 1402, 22 L.Ed.2d at 667]."

Any attempt by the plurality to suggest that the defendant's language is constitutionally unprotected is clearly without merit.

2. In *Claiborne Hardware Co.,* 458 U.S. at 927–28, 102 S.Ct. at 3433, 73 L.Ed.2d at 1245, this point was stated as follows:

"It is clear that 'fighting words'—those that provoke immediate violence—are not protected by the First Amendment. *Chaplinsky v. New Hampshire,* 315 U.S. 568, 572 [62 S.Ct. 766, 769, 86 L.Ed. 1031, 1035 (1942)]. Similarly, words that create an immediate panic are not entitled to constitutional protection. *Schenck v. United States,* 249 U.S. 47 [39 S.Ct. 247, 63 L.Ed. 470 (1919)]. This Court has made clear, however, that mere *advocacy* of the use of force or violence does not remove speech from the protection of the First

Amendment. In *Brandenburg v. Ohio,* 395 U.S. 444 [89 S.Ct. 1827, 23 L.Ed.2d 430 (1969)], we reversed the conviction of a Ku Klux Klan leader for threatening 'revengeance' if the 'suppression' of the white race continued; we relied on 'the principle that the constitutional guarantees of free speech and free press *do not permit a State to forbid or proscribe advocacy of the use of force or of law violation except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.*' [395 U.S. at 447, 89 S.Ct. at 1829, 23 L.Ed.2d at 434]." (Emphasis in original; footnote omitted).

However, I am not sure that the plurality is making the suggestion that the defendant's language is constitutionally unprotected. Its statement that "[b]ecause the statute does not prohibit communicative speech, we find that its proscription is not overbroad" (Plurality op. at 454) would indicate that so long as communicative speech is involved, the caller is protected. If the plurality were faithful to this precept, then the defendant should not have been convicted as he was clearly engaged in "communicative speech."

It cannot be doubted that because of the importance of free speech that statutes regulating it in order to be constitutional must be narrowly drawn so that they serve only the legitimate state interest involved. *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *West Virginia Citizens Action Group, Inc. v. Daley,* 174 W.Va. 299, 324 S.E.2d 713 (1984). In *Garcelon v. Rutledge,* 173 W.Va. 572, 318 S.E.2d 622, 625 (1984), we said: "To minimize the potential 'chilling effect' of regulations governing the exercise of rights guaranteed under constitutional free speech provisions, those regulations must be both narrowly and clearly drawn."

Furthermore, where a state statute punishes only spoken words, it can withstand an attack on its constitutionality only if it is authoritatively construed by the state court to be not susceptible of application to constitutionally protected speech. *Gooding v.*

*Wilson,* 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972).

The plurality cites a number of cases from other jurisdictions for the point that they have upheld harassing telephone call statutes. Some of these cases, however, when carefully examined, involve statutes that had some limiting language, or the courts imposed limitations to keep the statute constitutional. Other cases cited dealt with subsections that are not involved in the present case.[3] In *Donley v. City of Mountain Brook,* 429 So.2d 603 (Ala.Crim. App.1982), *reversed on other grounds, Ex Parte Donley,* 429 So.2d 618 (1983), *on remand,* 429 So.2d 620 (1983), and *People v. Smith,* 89 Misc.2d 789, 392 N.Y.S.2d 968, *cert. denied,* 434 U.S. 920, 54 L.Ed.2d 276, 98 S.Ct. 393 (1977), the statutes had an express exception whereby the prohibition against harassing calls did not apply to calls for which there was a legitimate purpose.

In *State v. Hagen,* 27 Ariz.App. 722, 558 P.2d 750 (1976), and *State v. Crelly,* 313 N.W.2d 455 (S.D.1981), the courts upheld statutes forbidding the use of obscene language on the telephone. While another portion of our statute deals with this issue, it is not involved in the present case because there is no claim that obscenities were used. The court in *State v. Elder,* 382 So.2d 687 (Fla.1980), was only concerned with that part of the Florida Code that prohibited making anonymous harassing calls. It appropriately emphasized that

**3.** Many state statutes involve a number of different subsections dealing with obscene, threatening, and anonymous telephone calls such as covered in W.Va.Code, 61–8–16, which provides: "(a) It shall be unlawful for any person with intent to harass or abuse another by means of telephone to: "(1) Make any comment, request, suggestion or proposal which is obscene; or "(2) Make a telephone call, whether or not conversation ensues, without disclosing his identity and with intent to harass any person at the called number; or "(3) Make or cause the telephone of another repeatedly or continuously to ring, with intent to harass any person at the called number; or "(4) Make repeated telephone calls, during which conversation ensues, with intent to harass any person at the called number; or

"(5) Threaten to commit a crime against any person or property. "(b) It shall be unlawful for any person to knowingly permit any telephone under his control to be used for any purpose prohibited by this section. "(c) Any offense committed under this section may be deemed to have occurred at the place at which the telephone call was made, or the place at which the telephone called was received. "(d) Any person who violates any provision of this section shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not more than five hundred dollars, or imprisoned in the county jail not more than six months, or both fined and imprisoned."

the anonymity of the caller not only instilled a sense of fear or discomfort in the receiver but was "a factor militating against any legitimate free speech communicative function." 382 So.2d at 691.

Challenges based on the void for vagueness doctrine were considered in *Constantino v. State*, 243 Ga. 595, 255 S.E.2d 710, *cert. denied*, 444 U.S. 940, 62 L.Ed.2d 306, 100 S.Ct. 292 (1979), *State v. Meunier*, 354 So.2d 535 (La.1978), and *Caldwell v. State*, 26 Md.App. 94, 337 A.2d 476 (1975), and the courts upheld the statutes but did not consider whether the statutes might be overbroad. The plurality cites *State v. Zeit*, 22 Or.App. 480, 539 P.2d 1130 (1975), but this result was reversed by the Oregon Supreme Court in *State v. Blair*, 287 Or. 519, 601 P.2d 766 (1979). In this latter case, it found that the statutory phrase "likely to cause annoyance" was unconstitutionally vague.[4]

There are several cases where courts have found harassing telephone call statutes not unconstitutionally overbroad because the courts characterize the statutes as regulating harassing conduct and not the speech itself. *See, e.g., State v. Anonymous*, 34 Conn.Supp. 689, 389 A.2d 1270, *appeal denied*, 174 Conn. 803, 382 A.2d 1332 (1978), *denial of petition for writ of habeas corpus aff'd, Gormley v. Director, Connecticut State Dept. of Probation*, 632 F.2d 938 (2d Cir.), *cert. denied*, 449 U.S. 1023, 101 S.Ct. 591, 66 L.Ed.2d 485 (1980); *Von Lusch v. State*, 39 Md.App. 517, 387 A.2d 306 (1978); *People v. Taravella*, 133 Mich.App. 515, 350 N.W.2d 780 (1984); *State v. Camp*, 59 N.C.App. 38, 295 S.E.2d 766, *appeal dismissed*, 307 N.C. 271, 299

S.E.2d 216 (1982). These cases have a sophistry that I find repugnant where, as here, legitimate communication ensues. It seems to me where conversation ensues, First Amendment protection must come into play in making any analysis of what is a harassing telephone call. In any event, integral to the charge in this case is that the defendant must have made "repeated telephone calls, during which conversation ensues." W.Va.Code, 61–8–16(a)(4). Thus, the gravaman is not just the physical conduct of making the call because a conversation must ensue.[5]

The leading federal case is *United States v. Lampley*, 573 F.2d 783 (3d Cir.1978), which involved 47 U.S.C. § 223(1)(D),[6] and repeated telephone calls by an individual to private persons. The court seized on the language "solely to harass" as importing a specific intent which "precludes the proscription of mere communication." 573 F.2d at 787. It went on to consider the argument that the section was void for vagueness and, finding that the specific intent requirement existed by virtue of the "solely to harass" language, upheld the section quoting this passage from *Screws v. United States*, 325 U.S. 91, 101–02, 65 S.Ct. 1031, 1035, 89 L.Ed. 1495, 1502–03 (1945):

> "The Court, indeed, has recognized that the requirement of a specific intent to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite statute invalid.... [W]here the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or

---

**4.** It was this type of language that resulted in two other courts invalidating their statutes. *People v. Klick*, 66 Ill.2d 269, 5 Ill.Dec. 858, 362 N.E.2d 329 (1977); *State v. Dronso*, 90 Wis.2d 110, 279 N.W.2d 710 (1979).

**5.** Where no conversation ensues, the conduct falls under either W.Va.Code, 61–8–16(a)(2) or (3). *See* note 3, *supra*. Under these sections, the communicating element is minimal and conduct becomes the dominant feature. As a consequence, First Amendment concerns are

less manifest. *See State v. Elder*, 382 So.2d 687 (Fla.1980).

**6.** The material portion of 47 U.S.C. § 223(1)(D) provides:

"Whoever—
(1) In the District of Columbia or in interstate or foreign communication by means of telephone—

\*   \*   \*

(D) make repeated telephone calls, during which conversation ensues, solely to harass any person at the called number."

knowledge that the act which he does is a violation of law."

I believe that the language with "intent to harass" as contained in W.Va.Code, 61–8–16(a)(4), would keep this section from being unconstitutional when it is kept in mind that this is an initial specific intent that must be shown. Where the initial purpose of the call is legitimate, then a violation is not shown as summarized by the court in *State v. Elder*, 382 So.2d at 691:

"In addition, it must be shown that when the telephone call was made it was the caller's *intent* to annoy, abuse, threaten or harass. This improper intent must be the motivating factor in the caller's telephoning another person and the call must not serve a legitimate communicative or informative function." (Emphasis in original; footnote omitted).

To place any other construction on this section would be to invite prosecution for any type of persistent telephone calls by persons who have legitimate objectives in mind. Certainly, I cannot conceive that the legislature intended to chill the right of our citizens to complain to a neighbor about his barking dog or his loud stereo and make repeated calls if he is rebuffed. Nor should he be fearful of repeatedly calling his landlord about the failure to correct conditions or to a repairman or merchant who has made inadequate repairs or has sold defective merchandise. A lethargic bureaucracy or business will hardly ever respond to one telephone call.[7] Even if the legislature so intended, it could not do so under First Amendment principles.

Certainly, a narrow construction of the statute is required not only on First Amendment grounds but also because it is in a penal statute. We have consistently

held that: "Penal statutes must be strictly construed against the State and in favor of the defendant." Syllabus Point 2, *State v. Ball*, 164 W.Va. 588, 264 S.E.2d 844 (1980). *See also State v. Vandall*, 168 W.Va. 361, 294 S.E.2d 177 (1982); *State v. Barnett*, 168 W.Va. 361, 284 S.E.2d 622 (1981); *State v. Cole*, 160 W.Va. 804, 238 S.E.2d 849 (1977).

Clearly, under these principles, the defendant's criminal conviction cannot stand. We have earlier noted that there is no dispute that the persons who received the telephone calls testified that the calls began in a civil manner, but even more importantly that the defendant sought legitimate information. There is no evidence that the initial purpose of the calls was other than legitimate. Consequently, the threshold proof of a specific intent to harass was absent.

The calls were all made during normal business hours and were to four different employees at Marshall University. Collectively, they could only recall the substance of eight phone calls made over a three and one-half month period. They did not disagree that the initial purpose of the calls was to inquire as to the defendant's status as a student, eligibility for courses, and the damage to his bicycle which occurred on the campus. It was only after the defendant realized that no favorable response would be forthcoming that he became unpleasant.

Several cases suggest that these circumstances are insufficient as a matter of law to warrant a conviction. In *People v. Cooper*, 32 Ill.App.3d 516, 336 N.E.2d 247 (1975), the court reversed a conviction for telephone harassment because the evidence did not prove the defendant had the requisite intent to annoy. There the defendant

---

**7.** Although the plurality voices concern over tying "up the phone for those who wish to reach their government on legitimate business" and "also tie up valuable government staff from doing their jobs," (Plurality op. at 820), this misconceives the issue. The traditional analysis is that such statutes are enacted to protect the privacy interests of the receiver. Where calls are made during working hours to government employees, there is, I believe, a diminished expectation of privacy and as a consequence a

higher level of communicative freedom by the caller:

"The ability of government, consonant with the Constitution, to shut off discourse solely to protect others from hearing it is, in other words, dependent upon a showing that substantial privacy interests are being invaded in an essentially untolerable manner." *Cohen v. California*, 403 U.S. 15, 21, 91 S.Ct. 1780, 1786, 29 L.Ed.2d 284, 291, *reh'g denied*, 404 U.S. 876, 92 S.Ct. 26, 30 L.Ed.2d 124 (1971).

made several calls to his brother's home wanting to speak to his brother. His sister-in-law answered the telephone and refused to allow the defendant to talk to his brother. The defendant then made some abusive remarks to the sister-in-law. The court concluded that the State failed to show the defendant had the intent to annoy at the time he made the calls.

Likewise, in *Caldwell v. State*, 26 Md. App. 94, 337 A.2d 476 (1975), the court reversed a conviction because the state failed to show with sufficient evidence the defendant intended to harass the woman he was calling even though he refused to give his name, called her while she was at work on two occasions the same day, asking her for a date. The court noted that even though the woman who received the calls was annoyed by them, that alone is insufficient evidence to show the defendant intended that effect when he called.

Finally, in *United States v. Darsey*, 342 F.Supp. 311 (E.D.Pa.1972), the defendant who was divorced called his mother-in-law on a number of occasions to inquire about the whereabouts of his former wife and particularly the welfare of his son. During the course of some of the phone calls, he became abusive. However, the court concluded as a matter of law that his calls were not made with the intent to harass the mother-in-law.

For the foregoing reasons, I respectfully dissent and I am authorized to state that Justice McGRAW joins me in this dissent.