# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**STATE OF WEST VIRGINIA,**
**Plaintiff Below, Respondent**

**vs)  No. 15-0195** (Harrison County 14-M-13-3)

**MATTHEW CALVERT,**
**Defendant Below, Petitioner**

**FILED**

**June 3, 2016**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Matthew Calvert, pro se,[1] appeals the sentencing order of the Circuit Court of Harrison County, West Virginia, following his conviction of harassment by electronic communications, a misdemeanor under West Virginia Code § 61-3C-14a (2014). Petitioner raises several assignments of error challenging the constitutionality of the statute and asserting there was insufficient evidence to support the jury's verdict. The State, by counsel, Jonathan E. Porter, filed a summary response in support of the circuit court's order.

This Court has considered the parties' briefs, oral arguments, and the appendix record on appeal. We find no substantial question of law and therefore a memorandum decision affirming the judgment is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure. As explained below, we reject Petitioner's constitutional arguments in their entirety and conclude there was sufficient evidence to support the verdict.

## I.  FACTUAL AND PROCEDURAL HISTORY

Between October 4 and 7, 2013, the internet website Topix had a chat thread entitled "Goff," under which various persons posted comments about Marshall Goff, the former chief of police of Clarksburg, West Virginia. Eventually, persons identifying themselves as Mr. Goff's wife, Cheryl Goff, and his sister, Tina Gallo, joined the discussion. Petitioner also began commenting in the thread. Petitioner's first post (post #13) was: "didn't the gallos run this town with corruption years ago? makes since goff is related to them. And I saw his son driving a cop car is he a police officer too? oh god we will never get away from this family[.]"

The person identifying herself as Tina Gallo replied to Petitioner's post by commenting in post #22:

---

[1] Petitioner was represented by counsel at trial and appeared pro se in this appeal. Petitioner is a 2014 graduate of the West Virginia University College of Law but he is not a member of our State Bar.

1

Let me get one thing straight. DO NOT EVER, AND I MEAN EVER, bring my son[2] into this discussion. Do you understand me? Since you know so much regarding my family, please come to my house. You and I will have a very brief discussion on your issues at hand, because apparently you have more than one on your mind. You can take this to the bank. I am a Goff, married to a Gallo, who, unknown to you is not originally from WV. They are from NY[], so do not get that twisted. Next, the Goff's and the Gallo's are here to stay. If you are wondering who is behind me as I speak . . . the list is long, so when you feel like a frog, leap! As far as my son driving a police car . . . again, my suggestion is you leave my son out of this. Do not think for one minute I would not defend anyone in my family because I will, but listen you low life scum . . . do not mention my son again. Remember hackers are everywhere, and I know a few[.]

(Footnote added). Petitioner responded to Ms. Gallo's reply by making the following post (post #31):

Please let me respond. I beg you to hack it and look for me! Your husband violated my most sacred right. I will have no problem answering your husband, your son, your friend, and any Clarksburg police department officer with my Mossberg shotgun, and I vow to you today, I will raise heaven and earth to have your husband convicted for what he did to me. I reiterate, please come looking for me, you come to my house bitch, I will open your chest with my 12 gauge, that I promise you from the bottom of my heart. Your husband wasn't a great man, he was a tool and the problem along with Zeke [L]opez and the rest of Clarksburg's officials. Please take notice along with Patsy Trecost, who I am also sure who took part in my railroading.

Immediately following Petitioner's post #31, a third person using the screen name "yeah yeah" commented in post #32, as follows:

Yeah[,] that's probably not smart! Threatening a police officer his family all bad decisions. See these things call IP addresses give away who you are and can be subpoenaed. The [sic] your arrest will follow! You and I both know he still has favors in [C]larksburg! Good luck with your quest!

In post #36, Petitioner replied to the third person's post #32 by making the following comment:

threats, threats, exactly what I responded to, you want to see someone willing to follow through, come find me. As for threats to Clarksburg Police, they know they aren't welcome here and if they come looking for trouble, they will get all they can handle. NOT a threat, a promise.

---

[2] It is unclear from the record whether Tina Gallo was referring to her son or her nephew (Marshall Goff's son) in this post.

Petitioner made one final post (post # 37): "Marshall Goff is a tool, a crook, and gets away with it. He should be in jail getting but f*cked by the people he abused and put in Jail. Maybe he can go munch on some of the pu*s his daughter eats[.]"

Detective Jason Webber of the Clarksburg Police Department, who investigates internet crimes, was monitoring the "Goff" chat thread during the times Petitioner made his posts. Being concerned with the comments, Detective Webber began an investigation to identify Petitioner. After discovering Petitioner's identity by executing search warrants, Detective Webber questioned and later arrested Petitioner. The grand jury indicted Petitioner for the misdemeanor offense of making harassing and threatening communications by computer. W.Va. Code § 61-3C-14a. The indictment contains the comments Petitioner made in posts #31 and #36.

At trial, the State introduced the Topix chat thread and Detective Webber explained how he identified Petitioner as the person making the posts. Detective Webber testified that he was concerned about the threats to the Clarksburg Police Department. Prior to trial, the circuit court granted Petitioner's motion to suppress evidence related to his prior domestic battery arrest and ruled that the State could not introduce evidence of the arrest, which had been expunged. Detective Webber did not mention the arrest but he did testify that police officers had been called to Petitioner's home for unspecified reasons. He testified that the nature of those calls, for the most part, was that someone needed assistance at the home and Petitioner called 911. Because of those prior visits to the home, the police knew that Petitioner possessed firearms. Detective Webber testified that he "was concerned that someone would go over there checking his residence, see if the neighbor is home, police officer knocks on the door and be shot."

Petitioner testified in his own defense and did not deny making the posts. Petitioner did not suggest that he made the posts in jest, nor did he testify that he was simply blowing off steam. To the contrary, Petitioner testified that *he* "felt absolutely threatened" by posts made from Ms. Goff and "needed to respond to try to deter anybody from coming to my house with the long list of people to do me harm." The defense strategy was that Petitioner was not threatening to commit a crime because he was conveying the message that he planned to act in self-defense, and self-defense is not a "crime." Petitioner requested a self-defense instruction, which the circuit court refused.

The jury found Petitioner guilty. He filed a motion for post-verdict judgment of acquittal, arguing the "State did not provide an articulable explanation or present evidence as to any particular crime the [Petitioner] threatened to commit." At the sentencing hearing, the circuit court denied that motion and his motion for a new trial. The circuit court sentenced Petitioner to sixty days in jail, suspended the sentence and placed him on two years' probation.[3] This appeal followed.

---

[3] The conditions of Petitioner's probation include (1) no access to social media sites for the term of probation; (2) participation in an anger management class within six months; and (3) submission of a verified affidavit that Petitioner read both the West Virginia Rules of Professional Conduct and the West Virginia Standards of Professional Conduct.

3

## II. STANDARD OF REVIEW

When the constitutionality of a statute is challenged, the scope of our review is necessarily plenary. *See* Syl. Pt. 1, *State v. Rutherford,* 223 W.Va. 1, 672 S.E.2d 137 (2008) ("The constitutionality of a statute is a question of law which this Court reviews *de novo.*"). With regard to Petitioner's assignment of error predicated on insufficiency of evidence, the standard we articulated in *State v. Guthrie,* 194 W.Va. 657, 461 S.E.2d 163 (1995), controls:

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

*Id.* at 663, 461 S.E.2d at 169, syl. pt. 3, in part. With these two standards in mind, we proceed to the merits of this case.

## III. DISCUSSION

Under the West Virginia Computer Crime and Abuse Act (the "Act"),[4] it is a crime "for any person, with the intent to harass or abuse another person, to use a computer, mobile phone, personal digital assistant or other electronic communication device" to "threaten to commit a crime against any person or property[.]" W.Va. Code § 61-3C-14a(a)(3).[5]

---

[4] West Virginia Code §§ 61-3C-1 to -21 (2014).

[5] The Act prohibits obscene, anonymous, harassing and threatening communications by various electronic devices as follows:

> (a) It is unlawful for any person, with the intent to harass or abuse another person, to use a computer, mobile phone, personal digital assistant or other electronic communication device to:
> (1) Make contact with another without disclosing his or her identity with the intent to harass or abuse;
> (2) Make contact with a person after being requested by the person to desist from contacting them;
> (3) Threaten to commit a crime against any person or property; or
> (4) Cause obscene material to be delivered or transmitted to a specific person after being requested to desist from sending such material.

In seeking reversal of his conviction, Petitioner first argues that the circuit court failed to narrowly construe the Act consistent with the First Amendment because "no reasonable juror could have found" that his comments constituted a "true threat." Although this argument is poorly developed, we discern it as requiring two independent analyses. We first address Petitioner's free-speech challenge to his conviction and then consider his sufficiency of the evidence argument.

Petitioner's contention that the harassment statute is unconstitutional because he was within his First Amendment rights in making various statements lacks merit. The United States Supreme Court has emphasized that

> the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which has never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or "fighting" words – those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.

*Chaplinsky v. New Hampshire,* 315 U.S. 568, 571-72 (1942) (citations omitted). Threats of violence do not fall within the parameters of constitutionally protected speech because of the government's interest in "protecting individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur." *R.A.V. v. City of St. Paul, Minn.,* 505 U.S. 377, 388 (1992); *see also Watts v. United States,* 394 U.S. 705, 707-08 (1969). Furthermore, the government may regulate or completely ban speech proposing illegal activity. *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 496 (1982).

Applying these principles to the case at hand, we find that the conduct proscribed by West Virginia Code § 61-3C-14a does not implicate constitutionally protected rights under the First Amendment. This Act does not prohibit speech or expression; it is facially limited to proscribing conduct of harassment or abuse. *See State v. Thorne,* 175 W.Va. 452, 454, 333 S.E.2d 817, 819 (1985) (holding statute prohibiting telephone harassment "is not prohibiting speech, because harassment is not a protected speech."); *see also State v. Bishop*, 774 S.E.2d 337, 343 (N.C. Ct. App. 2015) (finding North Carolina's cyber-bullying statute "is not directed at prohibiting the communication of thoughts or ideas via the Internet. It prohibits the intentional and specific conduct of intimidating or tormenting a minor. This conduct falls outside the purview of the First Amendment.").

---

W.Va. Code § 61-3C-14a, in part.  The Act further provides that a person may bring a civil action for violation of the Act and may be entitled to recover compensatory and punitive damages.

5

Petitioner also asserts his conviction should be overturned because "no reasonable juror could have found" that his comments constituted a threat to commit a crime. He therefore raises a sufficiency of the evidence argument. As the circuit court instructed the jury, West Virginia Code § 61-3C-14a(a)(3) requires a showing of the following elements: a defendant's (1) use of a computer or other electronic communication device, (2) the specific "intent to harass or abuse another person," and (3) a threat "to commit a crime against any person or property[.]" Viewing the evidence in the light most favorable to the State, we find a rational jury could, by valid lines of reasoning and permissible inferences, find that Petitioner used his computer to threaten to commit a crime[6] when he made the posts at issue, and that he did so with the requisite mens rea.[7]

Petitioner's second assignment of error is that the Act is unconstitutionally vague and overbroad in violation of the First Amendment to the United States Constitution and article III, §

---

[6] We summarily reject Petitioner's assignment of error three, namely, that the State had to identify and give a specific jury instruction as to the elements of the crime Petitioner threatened to commit. It is beyond genuine debate that shooting someone with a shotgun is a crime.

[7] With regard to the mens rea element of the crime, Petitioner maintains he was entitled to a specific intent-to-threaten jury instruction based on *Elonis v. United States,* 135 S.Ct. 2001 (2015). In *Elonis,* the United States Supreme Court was faced with a federal statute, 18 U.S.C. § 875(c), that criminalized communicating a threat through interstate commerce, but was silent on the mens rea required to commit the offense. The Court stated that when a statute is silent on the scienter needed to commit the offense *and* a scienter requirement is needed to separate wrongful from innocent conduct, the mens rea required to commit the offense must be greater than simple negligence. *Elonis,* 135 S.Ct. at 2010. Without specifically articulating the mens rea required under that statute, the Court found "[t]here is no dispute that the mental state requirement in Section 875(c) is satisfied if the defendant transmits a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat." 135 S.Ct. at 2012.

Petitioner's reliance on *Elonis* is misplaced. "First, *Elonis* is a case of statutory construction, and as such, is limited to 18 U.S.C. § 875(c). No case reported thus far extends *Elonis*'s holding beyond § 875(c)[.]" *U.S. v. Kirsch,* No. 07-CR-304S (6), 2015 WL 9077546, at *5 (W.D.N.Y. Dec. 16, 2015). Second, "[i]t is the absence of a *mens rea* requirement in § 875(c) that drives the decision in *Elonis.*" *Id.* Here, unlike in *Elonis,* our Act contains sufficient intent requirements and the jurors took into consideration Petitioner's subjective state of mind. Significantly, Petitioner did not contest that he made the posts with the intent to threaten. *See* 17 Oxford English Dictionary 998 (2d ed. 1989) (defining "threaten" as "to declare (usually conditionally) one's intention of inflicting injury upon" another). His core argument was that he answered a threat with a threat to act in self-defense. And third, unlike § 875(c), our Act does not impose a simple negligence standard. Accordingly, the "statute at issue in *Elonis* and the one[] at issue here are too dissimilar to extend *Elonis*'s narrow holding." *Kirsch,* WL 9077546, at *7. "Notably, *Elonis* itself falls short of imposing the intent-to-threaten requirement that [Petitioner] advocates. *See Elonis,* 135 S.Ct. at 2023 (Thomas, J., dissenting) ("The majority today at least refrains from requiring an intent to threaten for § 875(c) convictions.")." *Kirsch,* WL 9077546, at *7 n.1.

7 of the West Virginia Constitution.[8] We recognize that the Act at issue in this case contains nearly identical language to our telephone harassment statute[9] and in syllabus point one of *Thorne*, we held that statute was not unconstitutionally overbroad. 175 W.Va. at 453, 333 S.E.2d at 818. As the United States Court of Appeals for the Fourth Circuit noted, our telephone harassment statute

> is clearly not a censorial statute, directed at any group or viewpoint. It seeks to protect citizens from harassment in an even-handed and neutral fashion. Indeed, the statute requires no inquiry into the content of the telephone conversation. Moreover, as we noted earlier, West Virginia has a broad, legitimate interest in protecting its citizens from harassment, especially when harassment is accomplished by use of the telephone. In light of the limited application of the overbreadth doctrine in the context of criminal laws sought to be applied to constitutionally unprotected conduct, we conclude that the statute is not only constitutional as applied to Thorne, but is also not so broadly worded as to be facially overly broad.

*Thorne v. Bailey,* 846 F.2d 241, 244 (4th Cir. 1988), *cert. denied,* 488 U.S. 984 (1988) (citing *Broadrick,* 413 U.S. at 615 (footnote omitted)); *see also State v. Yocum,* 233 W.Va. 439, 445, 759 S.E.2d 182, 188 (2014) (holding language of West Virginia Code § 61-6-24(b), which provides a person is guilty of a felony when he or she "knowingly and willfully threatens to commit a terrorist act" to be "patently clear in its meaning" to "place a potential offender on notice as to what conduct is proscribed[.]").

In like fashion, while the Act at issue proscribes some specific types of language, *it does so solely when the use of that language is intended to harass or abuse.* As a result, if any

---

[8] Petitioner argues that the Act criminalizes a substantial amount of speech protected by the First Amendment and quotes extensively from portions of the statute that are not applicable to his conviction. We decline his invitation to pontificate about portions of the Act not at issue herein.

> Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court. . . . A closely related principle is that constitutional rights are personal and may not be asserted vicariously. . . . These principles rest on more than the fussiness of judges. They reflect the conviction that under our constitutional system courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws.

*Broadrick v. Oklahoma*, 413 U.S. 601, 610-11 (1973) (citations omitted).

[9] "It is unlawful for any person with intent to harass or abuse another by means of telephone" to "[t]hreaten to commit a crime against any person or property." W.Va. Code § 61-8-16(a)(5) (2014).

overbreadth exists in the statute, it is certainly not substantial, and may be cured through case-by-case analysis. We therefore reject Petitioner's constitutional arguments in their entirety.

In his remaining assignments of error, Petitioner challenges evidentiary rulings made by the circuit court. Petitioner argues the Topix chat log should not have been admitted because some of the posts were removed due to content. However, the State explained that some posts were missing and Petitioner had ample opportunity to address this fact before the jury. We therefore find no abuse of discretion. *See State v. Rodoussakis,* 204 W.Va. 58, 61, 511 S.E.2d 469, 472 (1998) ("A trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard.").

Petitioner also asserts the circuit court erred in permitting Detective Webber to testify that police officers had been called to Petitioner's home for unspecified reasons without inquiry into the admissibility of such testimony under Rule 404(b) of the West Virginia Rules of Evidence. However, Detective Webber did *not* testify about Petitioner's domestic battery arrest. The fact that the police had been to Petitioner's residence – at the request of Petitioner – does "not technically constitute either a 'collateral crime' or a 'wrongful act,' nor even 'uncharged misconduct.'" *State v. Dorisio*, 189 W.Va. 788, 793, 434 S.E.2d 707, 712 (1993); W.Va.R.Evid. 404(b). The State offered that testimony to explain how police knew there were firearms in Petitioner's home; this testimony may have been unnecessary because Petitioner referred to owning a shotgun in his posts. Nevertheless, we do not find the circuit court abused its discretion in allowing this testimony considering the minimal danger of unfair prejudice.

## IV. CONCLUSION

For the reasons set forth above, this Court affirms the February 3, 2015, sentencing order of the Circuit Court of Harrison County.

Affirmed.

**ISSUED:** June 3, 2016

**CONCURRED IN BY:**

Chief Justice Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II