# (April 11, 1974)

■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* PERRY B. DURYEA, JR., et al., Respondents. THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* JAMES THREATTE, Respondent.

APPEAL from orders of the Supreme Court entered January 24, 1974 in New York County, which granted a motion by defendants for an order dismissing the indictments.

Orders, Supreme Court, New York County, each entered on or about January 24, 1974, unanimously affirmed.

Steuer, J. (concurring). The indictments charged the defendants with conspiracy to violate section 457 of the Election Law by means of the following acts: The defendants, representing the 1972 Republican Assembly Campaign Committee, sought to siphon off votes from the candidates for the Democratic Party in certain Assembly Districts to the Liberal Party candidates, thereby increasing the chances of election of the Republican candidates. The means taken to effectuate this purpose was the circulation of some 80,000 letters to registered voters. These letters were ostensibly issued by the "Action Committee for the Liberal Party" and were signed by an individual purporting to be an officer of such committee, whereas the letters were caused to be sent by the defendants pursuant to the conspiracy. Section 457 prohibits the distribution in quantity of any letter for another containing any statement regarding a political party or candidate in connection with an election without setting out legibly the name and address of the printer and of the person or committee at whose instance or request the letter is distributed. Violation is made a misdemeanor. Interpretations of the statute in relationship to its constitutionality have degenerated into interpretations of the interpretations. It would be well to return to the sources. The protection of the First Amendment is not all inclusive. It does not provide a cloak for fraudulent statements or writings. An anonymous writing is entitled to the same protection as one that is acknowledged. So that a statute that forbids the dissemination of all anonymous publications contravenes the amendment. By the same token, an anonymous publication gains no extra protection by virtue of its anonymity over one that is signed. Consequently, an anonymous publication aimed to defraud is just as actionable as one that is signed. Section 457 is aimed to prevent a particular species of election fraud that has become widespread and prevalent, namely, diverting votes from a candidate who might be successful to one with no chance of success so that a third candidate can win. If the electorate was aware that the source of support for the candidate

with little chance of election-was from one of his rivals, or his rival's backers, the effort would lose much of its effectiveness. The purpose of the statute is to make this information known to the voters who receive the material in question. It cannot be claimed with any sincerity that the State may not safeguard the purity of its elections in this way. It is asserted, however, that the statute in question not only does this but goes a great deal further. It not only makes criminal an anonymous publication supporting a candidate for fraudulent purposes, it places the same imprimatur on the anonymous writer who in all good faith is urging the election of the candidate of his choice. Clearly this offends against the First Amendment. It is, however, argued that these defendants are in no position to raise this contention. The indictment alleges a conspiracy and the purpose of that conspiracy. It negates the instance of the legitimate anonymous writing in favor of the minority candidate. While the argument has factual support, it does not go far enough. To show a conspiracy to violate section 457 it would only be necessary to prove that these defendants conspired to send out a letter to a large number of prospective voters, which letter concealed their sponsorship. Their invidious motive would not have to be established. The only possible way in which the constitutionality of section 457 could be supported is through a pragmatic approach, of which there are two facets. The first is that persons honest in their support of a candidate do not conceal or falsify their identity in rendering that support and, hence, the statute would have practical application only to those who sought to pervert the elective process. Secondly, this particular form of election fraud has been dealt with by 38 of our States, and the statutes all take the same form. These are weighty arguments and, in a legal system more realistic then our own, might well prevail. The fact remains that under the statute in question one who is constitutionally protected (as these defendants according to allegations in the indictment are not) could be convicted; and so could these defendants without proof of the fraudulent purpose alleged. Consequently the statute is unconstitutional as making conduct constitutionally protected subject to criminal sanction. McGivern, P. J., Murphy, Lupiano and Capozzoli, JJ., concur in the decision; Steuer, J., concurs, in opinion. Orders affirmed, etc.