474 S.E.2d 508

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Thomas BERRILL, Defendant Below, Appellant.**

No. 23050.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 27, 1996.

Decided June 14, 1996.

Scott E. Johnson, Assistant Attorney General, Charleston, for Appellee.

F. John Oshoway, Grantsville, for Appellant.

Robert J. O'Brien, Buckhannon, for Amicus Curiae, West Virginia Civil Liberties Union.

ALBRIGHT, Justice.

This appeal is from an order of the Circuit Court of Calhoun County, which denied defendant's petition appealing magistrate court jury convictions of disrupting a public meeting in violation of W.Va.Code § 61–6–19 and wearing a mask in public in violation of W.Va.Code § 61–6–22. Appellant, defendant below, first argues that W.Va.Code §§ 61–6–19 and 61–6–22 were unconstitutionally applied to him, in violation of his rights to petition and to freedom of speech under the First Amendment of the United States Constitution and Article III, §§ 7 and 16 of the West Virginia Constitution. Additionally, appellant argues that he was denied the right to allocution. We find that W.Va.Code §§ 61–6–19 and 61–6–22 were constitutionally applied to appellant and, therefore, affirm the convictions. However, we agree that appellant was denied his right to allocution and reverse and remand the matter to the circuit court, with directions to resentence the appellant after first according him his right of allocution and considering any allocution offered.

The facts are not disputed. In an effort to convince the Calhoun County Board of Education (Board) to change the Calhoun County High School red devil mascot[1], Thomas Berrill, appellant, went to a Calhoun County Board meeting dressed in a devil costume. The costume included a mask that covered his face. Prior to the meeting, Mr. Berrill called the Board and asked to be placed on the meeting agenda under the fictitious name of "Mr. DeVille". He did not inform the Board of his true identity nor of his plan to

---

1. Mr. Berrill believes it is wrong to have a repre-    sentation of the devil as the high school mascot.

dress in a devil costume. The meeting was held at the Board office, which is owned by the Board, in a room that had only one means of exit, an interior door leading to another part of the building. Although the agenda for the Board meeting provided a time for public questions and comments, Mr. Berrill did not await that opportunity. Rather, when Mr. Berrill entered the meeting, he took advantage of a pause in the proceedings, a short period of silence, to begin his conduct and remarks. The evidence discloses that Mr. Berrill moved or "pranced" about the room and began to speak although he was not called on by the moderator to do so. Mr. Berrill then addressed the gathering for a period estimated by witnesses to range from one-and-a-half to ten minutes, during which time the regular business of the meeting came to a halt. Although Mr. Berrill used no threatening words and had no physical contact with anyone at the meeting, he ignored instructions to take a seat or leave and was at least twice called out of order by the moderator. In his statement to the assembly, Mr. Berrill represented that he was the red devil and thanked the Board for keeping the devil in the schools and keeping God out.

Mr. Berrill departed from the meeting room only when the Board president stood up and moved toward Mr. Berrill.

Appellant was charged in the Magistrate Court of Calhoun County with one count of violating W. Va.Code § 61–6–19 (hereinafter "the anti-disruption statute")[2] for wilfully disrupting a public meeting and one count of violating W. Va.Code § 61–6–22 (hereinafter "the anti-mask statute")[3] for wearing a mask in a public building. During trial, witnesses for the State who were present at the meeting testified that they were frightened during the incident, essentially because they did not know what was happening, who defendant was, or whether he would become violent. The witnesses also stated that they were concerned for the safety of the children who were present at the meeting. In addition, one witness testified that she first saw Mr. Berrill without his mask, when he came to the door of the room where the meeting was being held and asked whether he was at the meeting place for the Board. The witness stated that she did not know Mr. Berrill, but when he returned dressed as a devil she

2. West Virginia Code § 61–6–19 (1992) states:

If any person wilfully interrupt or molest the orderly and peaceful process of any department, division, agency or branch of state government or of its political subdivisions, he shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not more than one hundred dollars, or imprisoned in the county jail not more than six months, or both fined and imprisoned: Provided, That any assembly in a peaceable, lawful and orderly manner for a redress of grievances shall not be a violation of this section.

3. West Virginia Code § 61–6–22 (1992) states:

(a) Except as otherwise provided in this section, no person, whether in a motor vehicle or otherwise, while wearing any mask, hood or device whereby any portion of the face is so covered as to conceal the identity of the wearer, may:
(1) Come into or appear upon any walk, alley, street, road, highway or other thoroughfare dedicated to public use;
(2) Come into or appear in any trading area, concourse, waiting room, lobby or foyer open to, used by or frequented by the general public;
(3) Come into or appear upon or within any of the grounds or buildings owned, leased, maintained or operated by the state or any political subdivision thereof;

(4) Ask, request, or demand entrance or admission to the premises, enclosure, dwelling or place of business of any other person within this state; or
(5) Attend or participate in any meeting upon private property of another unless written permission for such meeting has first been obtained from the owner or occupant thereof.
(b) The provisions of this section do not apply to any person:
(1) Under sixteen years of age;
(2) Wearing a traditional holiday costume;
(3) Engaged in a trade or employment where a mask, hood or device is worn for the purpose of ensuring the physical safety of the wearer;
(4) Using a mask, hood or device in theatrical productions, including use in mardi gras celebrations or similar masquerade balls;
(5) Wearing a mask, hood or device prescribed for civil defense drills, exercises or emergencies; or
(6) Wearing a mask, hood or device for the sole purpose of protection from the elements or while participating in a winter sport.
(c) Any person who violates any provision of this section is guilty of a misdemeanor, and, upon conviction thereof, shall be fined not more than five hundred dollars or imprisoned in the county jail not more than one year, or both fined and imprisoned.

recognized his clothing and thus knew it was the same man that had previously appeared at the door. Another witness testified that he suspected the man dressed as a devil was Mr. Berrill, because Mr. Berrill had previously addressed the Board regarding the red devil mascot.[4]

Mr. Berrill was found guilty of both charges by a petit jury in the magistrate court. Immediately after dismissing the jury, without making inquiry of defendant whether he wished to speak, the magistrate sentenced defendant to ninety days in jail on each charge, to be served concurrently. Mr. Berrill was also fined $100 for disrupting the meeting and $200 for wearing the mask. After the magistrate imposed the sentence, there was an exchange between the court and counsel regarding Mr. Berrill's bond and a stay of execution of the sentence pending appeal. Mr. Berrill then asked to address the court. Defense counsel stated, "we're finished." The court instructed Mr. Berrill to be seated. Mr. Berrill made additional attempts to speak and was removed from the court. By order dated November 18, 1994, the Circuit Court of Calhoun County denied Mr. Berrill's subsequent petition for appeal and found that W.Va.Code §§ 61–6–19 and 61–6–22(3) had been constitutionally applied to him.

## STANDARD OF REVIEW

■ As noted, appellant claims that the statutes under which he was convicted were unconstitutionally applied to him. The facts of this case are not disputed. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

■ We are also asked to review the trial court's error in failing to provide the right to allocution when defense counsel did not object to the denial. Accordingly, the question before us is whether the denial of allocution constitutes plain error. "To trigger applica-

tion of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." Syl. pt. 7, *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995).

## RIGHT TO PETITION AND FREEDOM OF SPEECH

■ Mr. Berrill, appellant and defendant below, challenges his conviction on the grounds that it violates his right to petition for a redress of grievances and his right to freedom of speech as provided under the First Amendment to the United States Constitution, and Article III, §§ 7 and 16 of the West Virginia Constitution.

"Although the right to petition and the right to free speech are separate guarantees, they are related and generally subject to the same constitutional analysis." *Wayte v. United States*, 470 U.S. 598, 610 n. 11, 105 S.Ct. 1524, 1532 n. 11, 84 L.Ed.2d 547, 558 (1985). Therefore, we will analyze Mr. Berrill's constitutional claims together.

■ In advancing his arguments on the issue of the right to petition the government for redress of grievances, Mr. Berrill argues that his activity was peaceful conduct directed at communicating a grievance to government. He asserts that petitions to government, particularly in the case of perceived grievances, will involve controversy and passion, and thus his disruption of the meeting was part of the process of government. He also contends that, in case of controversy, it is to be expected that speakers and spectators on both sides of an issue will appear and participate. He states that "applause for favored speakers and hoots for the opponents, perhaps even a few angry words, are all considered" *de rigueur*. Finally, he asserts that the line drawn by the Federal and State Constitutions is at violence and the real threat of violence, not comfort or subjective alarm. Mr. Berrill concludes that because he

---

4. Mr. Berrill had previously informed the Board of his concern about the mascot at a Board meeting in the fall of 1993. At that meeting he

wore normal attire and scheduled his appearance in his own name.

was not violent and did not threaten violence, his conduct should be protected.[5]

In further support of the argument that his right to petition was violated, appellant relies on *Webb v. Fury*, 167 W.Va. 434, 282 S.E.2d 28 (1981), *overruled by Harris v. Adkins*, 189 W.Va. 465, 432 S.E.2d 549 (1993) (holding that right to petition does not provide an absolute privilege for intentional and reckless falsehoods), and the *Noerr–Pennington* doctrine, which was established in *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), and *United Mine Workers of America v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626

(1965). *Webb* and the cases discussed in it relating to the *Noerr–Pennington* doctrine involved claims of immunity from civil actions arising out of concerted efforts to persuade government to act in a public policy arena. After reviewing these authorities, we find them inapplicable to the case at hand. The *Webb* Court specifically observed that the petitioners in that case attempted to conduct their petitioning activity "in the manner prescribed by statute and agency regulations." *Webb v. Fury*, 167 W.Va. at 453, 282 S.E.2d at 39. Mr. Berrill, in contrast, disregarded the established procedures for offering public comment during a Board of Education meeting, interrupted the orderly conduct of the meeting, and thus utterly failed to conduct

---

5. To support this argument, Berrill cites three cases involving obstructing a police officer (at least one of which applied the overbreadth doctrine). He quotes "every person has a first amendment right to question or challenge the authority of a police officer, provided that fighting words or other opprobrious language is not used." Berrill's counsel then asserts that because the first amendment protects a citizen's right to interrupt a police officer in the process of performing his duties (i.e. issuing a traffic ticket on the recipient's private property), the first amendment surely must also protect the "minor" disruption of a school board meeting. Counsel further asserts that Berrill's conduct should be protected because he did not use "fighting words or other opprobrious language." We find these arguments not helpful in determining the proper limits of government power to regulate the conduct of public meetings and prohibit the wearing of masks in public.

Apparently, to further support this argument, Berrill cites *State v. Thorne*, 175 W.Va. 452, 333 S.E.2d 817 (1985), *cert. denied*, 474 U.S. 996, 106 S.Ct. 413, 88 L.Ed.2d 363 (1985). In *Thorne*, a defendant convicted of making harassing phone calls in violation of W.Va.Code § 61–8–16(a)(4) (1984) challenged the statute as a violation of his right to freedom of speech. This Court upheld the conviction and found that the statute was neither unconstitutionally broad nor unconstitutionally applied to the defendant because it required the intent to harass or abuse, which are not legitimate components of communication. The Court further found that the statute did not violate the first amendment right to petition the government for redress. The Court commented "repeated calls for the sole purpose of harassing government employees ... would tie up the phone for those who wish to reach their government on legitimate business.... The first amendment does not protect someone interrupting a legitimate government function." *Id.* 333 S.E.2d at 820 (citation omitted). As explained in this opinion, we have found that Mr. Berrill's

conduct disrupted a legitimate government function, and thus Mr. Berrill is not entitled to first amendment protection.

Finally, to support his contention that the federal and state constitutions draw the line at violence and threat of violence, Berrill cites *Woodruff v. Bd. of Trustees, Cabell Huntington Hospital*, 173 W.Va. 604, 319 S.E.2d 372 (1984). Berrill states that the *Woodruff* court "cited with approval cases too numerous to mention standing for the proposition that as long as an assemblage for expressive activity is peaceful, and no violence is advocated, it is protected under the first amendment." Upon review of these cases, we find that many of them impliedly support our finding that the government can enforce content neutral restrictions on protected freedoms for the purpose of maintaining the orderly and peaceful process of political subdivisions. Like the statute in *Woodruff*, the anti-disruption statute proscribes breaches of the peace. " 'The term "breach of the peace" is generic, and includes all violations of the public peace or order or decorum; in other words, it signifies the offense of disturbing the public peace or tranquillity enjoyed by the citizens of a community ... By peace, as used in this connection, is meant the tranquillity enjoyed by the citizens of a municipality or community where good order reigns.' *State v. Long*, 88 W.Va. 669, 108 S.E. 279 [1921]." *Catlette v. United States*, 132 F.2d 902, 906 (1943). There is a sound constitutional basis for action by the legislature to prohibit breaches of the peace. *See Woodruff v. Bd. of Trustees, Cabell Huntington Hospital*, 173 W.Va. 604, 319 S.E.2d 372 (1984); *Bachellar v. Maryland*, 397 U.S. 564, 90 S.Ct. 1312, 25 L.Ed.2d 570 (1970); *Shuttlesworth v. City of Birmingham, Ala.*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); *Brown v. Louisiana*, 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed.2d 637 (1966).

Consequently, we find that the Legislature acted within its constitutional discretion when it enacted W.Va.Code § 61–6–19.

his petitioning activity "in the manner prescribed by statute and agency regulations."

Appellant further asserts, without discussion, that the anti-disruption statute must be found void under the tests established in *United States v. O'Brien,* 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672, 680 (1968): "[A] government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Id.,* at 377, 88 S.Ct. at 1679. We find that the anti-disruption statute meets these requirements. Clearly, the anti-disruption statute under discussion here does no more than provide for the protection of the public interest in the orderly and open conduct of public meetings. Many courts, including the United States Court of Appeals, Fourth Circuit, have recognized that governments have a substantial interest in maintaining order in public meetings.[6] The Fourth Circuit has stated:

> Because of government's substantial interest in having such meetings conducted with relative orderliness and fairness to all, officials presiding over such meetings must have discretion, under the 'reasonable time, place and manner' constitutional principle, to set subject matter agendas, and to cut off speech which they *reasonably* perceive to be, or imminently to threaten, a disruption of the orderly and fair progress of the discussion, whether by virtue of its irrelevance, its duration, or its very tone and manner.

*Collinson v. Gott,* 895 F.2d 994, 1000 (1990) (Phillips, J., concurring) (footnote omitted).

Secondly, we note that Mr. Berrill was not prevented from communicating his message to the Board of Education. The Board president testified at the trial that he always permitted the public an opportunity to speak at the appropriate time and a time was fixed on the agenda for such public input. Mr. Berrill initially undertook to follow those procedures by arranging to be placed on the meeting agenda as a speaker, albeit under the alias, "Mr. DeVille". He failed, however, to wait until he was properly called to address the gathering. Instead, Mr. Berrill entered the meeting room in the middle of the meeting and immediately began his exhortation. Mr. Berrill admits that the meeting came to a halt during his presentation.

■ The anti-disruption statute imposes no explicit restrictions on free expression or other First Amendment freedoms; at most it sanctions only implicit limitations on the time, place, and manner of free expression which a public body, whose meetings are protected by the provisions of the statute, may adopt or enforce to structure and conduct its meetings. "Expression, whether oral or written or symbolized by conduct, is subject to reasonable time, place, or manner restrictions." *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221, 227 (1984).[7] Such restrictions "are valid provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Id.* Thus, we conclude that the anti-disruption statute was not applied to Mr. Berrill in a way that violated his rights of freedom of speech and petition. The statute proscribes, in relevant part, wilfully interrupting or molesting the

---

**6.** *See Jones v. Heyman,* 888 F.2d 1328, 1333 (11th Cir.1989) (finding the mayor's interest in controlling the agenda and in preventing the disruption of city commission meetings was a significant governmental interest); *Brown v. Smythe,* 780 F.Supp. 274, 280 (E.D.Pa.1991) (quoting *Collinson v. Gott,* 895 F.2d 994 (4th Cir.1990)); and *Godwin v. East Baton Rouge Parish Sch. Bd.,* 408 So.2d 1214, 1218 (La.1981) ("It is apparent that the board's interest in con-

ducting its meetings in an orderly and dignified manner is a substantial consideration and a valid governmental objective."), *appeal dismissed,* 459 U.S. 807, 103 S.Ct. 31, 74 L.Ed.2d 45 (1982).

**7.** Because the anti-disruption statute is a time, place, or manner restriction, we believe the *Clark* test, rather than the *O'Brien* test, is dispositive of the issue now before us.

orderly and peaceful process of political subdivisions. Because W.Va.Code § 61–6–19 creates an offense without reference to speech, or the content thereof, we hold that it is a simple time, place, or manner restriction on the right to petition and freedom of speech, a restriction which is wholly neutral with respect to the content of the restricted speech.

Finally, we note the State's argument that First Amendment rights may not be exercised in a manner destructive of other's rights. In this case, Mr. Berrill failed to follow the specific procedures established by the Board to allow citizens to address their concerns. If concerned citizens were permitted to assert their First Amendment rights by addressing public meetings at will, without following established procedures, the governmental body would cease to function and no meaningful communication could occur. "First Amendment rights 'are not a license to trample upon the rights of others. They must be exercised responsibly and without depriving others of their rights, the enjoyment of which is equally precious.'" *Barker v. Hardway*, 283 F.Supp. 228, 238–39 (S.D.W.Va.1968) (*quoting Baines v. City of Danville*, 337 F.2d 579, 586 (4th Cir.1964)), *aff'd*, 399 F.2d 638 (4th Cir.1968), *cert. denied*, 394 U.S. 905, 89 S.Ct. 1009, 22 L.Ed.2d 217 (1969).

■ We turn now to the anti-mask statute, utilizing again the *O'Brien* analysis.[8] The government interest implicated in our anti-mask statute can be ascertained from its plain language. "One canon of statutory construction is to follow the statute's plain, unambiguous language. 'When the statute is unambiguous on its face, there is no real need to consider its legislative history.' *Cooper v. Tazewell Square Apartments, Ltd.*, 577 F.Supp. 1483, 1487 (W.D.Va.1984), *rev'd on other grounds, Kennedy v. Block*, 606 F.Supp. 1397 (W.D.Va.1985); *Brown v. Porcher*, 502 F.Supp. 946, 955–56 n. 17 (D.S.C.1980), *aff'd as modified*, 660 F.2d 1001 (4th Cir.1981) *cert. denied*, 459 U.S. 1150, 103 S.Ct. 796, 74 L.Ed.2d 1000 (1983)." *State v. Boatright*, 184 W.Va. 27, 399 S.E.2d 57 (1990) (per curiam). The language of W.Va.Code § 61–6–22 clearly and unambiguously prohibits appearing in specified places when "any portion of the face is so covered as to conceal the identity of the wearer." Appellant questions whether the government has a legitimate interest in individuals concealing their identity. The obvious governmental interest here is the protection of citizens from violence and from the fear and intimidation of being confronted by someone whom they cannot identify.[9] As the Georgia Supreme Court observed in *State v. Miller*, 260 Ga. 669, 398 S.E.2d 547, 550 (1990):

> We know that "[p]ublic disguise is a particularly effective means of committing crimes of violence and intimidation. From the beginning of time the mask or hood has been the criminal's dress. It conceals evidence, hinders apprehension and calms the criminal's inward cowardly fear." M. Abram & A. Miller, "How to Stop Violence! Intimidation! In Your Communi-

8. "[A] government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672, 680 (1968).

9. We note that a number of states have enacted similar statutes. We perceive that a principal motivation for such legislation relates to historical and largely cultural phenomena which were considered to endanger the peace and domestic security of communities by reason of violence or the threat of violence executed through more or less secret societies whose members' identities have been regularly obscured by the use of costumes and masks. *See* Ala.Code § 13A–11–9 (1994); Cal.Penal Code § 185 (West 1988); Conn. Gen.Stat. Ann. § 53–37a (West 1994); Del. Code Ann. tit. 11, § 1301 (1995); D.C.Code Ann. § 22–3112.3 (1989); Fla. Stat. Ann. §§ 876.12–16 (West 1994); Ga.Code Ann. § 16–11–38 (1992); Mich.Comp. Laws Ann. § 750.396 (West 1991); Minn.Stat. Ann. § 609.735 (West 1987); N.Y. Penal Law § 240.35 (McKinney 1989); N.C. Gen.Stat. §§ 14–12.7–11 (1995); Okla. Stat. Ann. tit. 21, § 1301 (West 1983); Tenn.Code Ann. § 39–17–309 (1991); Va.Code Ann. § 18.2–422 (1988). The decision of our Legislature to provide for the peace and domestic security of this State by the enactment of like legislation is clearly a proper exercise of the Legislature's discretion.

ty" (August 15, 1949). A nameless, faceless figure strikes terror in the human heart. But, remove the mask, and the nightmarish form is reduced to its true dimensions. The face betrays not only identity, but also human frailty.

Moreover, under the plain language of the statute, it does not matter what message, if any, is to be conveyed by wearing a mask. The focus, as appellant has conceded, is on the concealment of identity, and any limitation on speech is merely a secondary effect. Thus, the anti-mask statute plainly " 'seeks to proscribe conduct, not free speech, and "... that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct...." ' " *Id.* 398 S.E.2d at 551 (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830, 842 (1973)).

We find further that any restriction on Mr. Berrill's constitutionally protected freedoms was minimal. The anti-mask statute did not prevent Mr. Berrill from delivering his message. As we previously mentioned, he had already addressed the Board on the same issue the previous fall. Moreover, the statute did not prevent Mr. Berrill from demonstrating his perception of the evil appearance of the devil, as long as he did not conceal his identity while doing so.[10] Obviously, Mr. Berrill had alternate methods of demonstrating and articulating his concerns that would not have concealed his identity and thus violated the statute under consideration.

An amicus curiae brief filed in this appeal raises, among other matters, a series of cases which protected anonymous writings and anonymous membership in organizations.[11] We find that none of these cases implicate the government's interest in public order and safety in the manner and scope of the two statutes herein involved.[12]

Additionally, we note that there is a clear nexus between the government's interest and Mr. Berrill's activity. Our review of the record reveals that the people who attended the meeting were frightened by Mr. Berrill's behavior. They were worried that Mr. Berrill would become violent, and they were concerned for their own safety, as well as the safety of the children present. Certainly, these people would not have suffered such fear and intimidation if they had known the identity of the person portraying the devil before them. Therefore, we find W.Va.Code § 61–6–22 was constitutional as applied to Mr. Berrill.

We reject Mr. Berrill's arguments for an additional, persuasive reason. "[I]t is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate that the First Amendment even applies." *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293 n. 5, 104 S.Ct. 3065, 3069 n. 5, 82 L.Ed.2d 221, 227 (1984). We have considered whether Mr. Berrill has met his burden of demonstrating that his conduct at the Board meeting "constituted expressive conduct, permitting him to invoke the First Amendment in challenging his conviction." *Texas v. Johnson,* 491 U.S. 397, 403, 109

**10.** Appellant asserts that the exceptions contained in the anti-mask statute do not encompass all of the "innocent" reasons one may have for wearing a mask, and thus it creates uncertainty for individuals wishing to employ a mask for expressive purposes. While we recognize the difficulty to which appellant's argument is addressed, we also recognize that the exceptions stated in the statute are defined with sufficient clarity to be understandable and consider the exceptions stated by the legislation to be within the legitimate discretion of a legislative body. Specifically, we note that the exceptions stated in the West Virginia statute are substantially identical to exceptions in one or more of the statute of other states identified in note 9 *supra.*

**11.** *McIntyre v. Ohio Elections Commission,* —— U.S. ——, 115 S.Ct. 1511, 131 L.Ed.2d 426

(1995); *American Communications Assoc. v. Douds,* 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925 (1950); *NAACP v. Alabama,* 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958); *Talley v. California,* 362 U.S. 60, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960); *New York v. Duryea,* 76 Misc.2d 948, 351 N.Y.S.2d 978 (1974), *aff'd,* 44 A.D.2d 663, 354 N.Y.S.2d 129 (1974); *People v. White,* 116 Ill.2d 171, 107 Ill.Dec. 229, 506 N.E.2d 1284 (1987).

**12.** The Amicus brief further asserts that W.Va. Code §§ 61–6–19 and 61–6–22 are unconstitutionally vague and over broad. We believe our discussion of these statutes sufficiently establishes their constitutionality.

S.Ct. 2533, 2538, 105 L.Ed.2d 342, 352 (1989). To answer this question, we have considered whether Mr. Berrill has demonstrated that "[a]n intent to convey a particularized message was present, and in the surrounding circumstances the likelihood was great that the message would be understood by those who viewed it." *Spence v. Washington,* 418 U.S. 405, 410–11, 94 S.Ct. 2727, 2730, 41 L.Ed.2d 842, 847 (1974) (per curiam). Having reviewed the record in this case, we find that Mr. Berrill may have demonstrated an intent to convey a particularized message, but he has failed to show a likelihood that his message would be understood. Indeed, the record clearly demonstrates that his intended message was completely misunderstood.

Mr. Berrill sought to convey his concern about the use by a high school of a devil image as the school mascot and to persuade the Board to employ another mascot image. Having failed to adequately bring the matter to the attention of the Board, in his view, despite an oral address to the Board in the fall of 1993 and a series of letters to persons he deemed appropriate (including an unpublished letter to the editor of the local paper), Mr. Berrill resorted to the conduct outlined in this opinion.

Mr. Berrill asserts that he employed the devil costume in an effort to draw attention to his cause. He contends that the mask was not intended to conceal his identity, but was a critical part of his message, the purpose of which was to graphically portray the image he felt the mascot represented. He asserts that "the mask was intended to conjure the horrific image of the master of hell, as distinguished from the almost cherubic aspect of the actual mascot."

In the surrounding circumstances, it appears that Mr. Berrill's conduct resulted more in chaos than understanding. The surrounding circumstances to which we refer include Mr. Berrill's entrance into a public meeting while dressed as a devil with his identity concealed; his address to the assembly at a time when the public had not yet been invited to speak; his having moved or "pranced" around the room; and, with his speech and his refusal to cease and desist, having disrupted the orderly process of the meeting. We further refer to the circumstance that the room had but one exit, to an interior area of the building, likely inhibiting exit from the room by the assembly had violence occurred. Finally, we note that there were children present, which created additional uneasiness and concern on the part of the adults.

Our view that Mr. Berrill's conduct was more likely to create confusion than convey an understandable message under the circumstances is further supported by testimony presented at trial, which tended to indicate that the audience was preoccupied with evaluating the potential danger of the situation. Of the four State witnesses who testified about the meeting, two indicated their concern that the man dressed as a devil might have been carrying a gun, and three stated that they were concerned about the safety of the children who were present. All four of the witnesses expressed that they did not know what to expect and that they were concerned that the situation may become violent. Additionally, one witness specifically stated that she was so scared that she did not listen to much of what Mr. Berrill said. We conclude that Mr. Berrill has failed to demonstrate that his conduct was likely to be understood by those present as expressive of the message he wished to convey. Rather, it appears to have generated, at the very least, uncertainty as to Mr. Berrill's identity, concern for the safety of children, some fear of violence, and concern for the safety of those who might wish to exit the room in case violence occurred. Accordingly, we hold that neither the First Amendment to the Constitution of the United States nor Article III, §§ 7 and 16 of the West Virginia Constitution preclude the prosecution of the defendant under the W.Va.Code § 61–6–22.

## ALLOCUTION

Mr. Berrill also argues that, upon being found guilty of the charges, he was denied his right to allocution before sentencing, as provided for in Rule 19 of the West Virginia Rules of Criminal Procedure for Magistrate Courts (1993). Rule 19 reads, in pertinent part:

[B]efore imposing sentence the magistrate shall:

> (1) Afford counsel an opportunity to speak on behalf of the defendant; and

> (2) Address the defendant personally to ask if the defendant wishes to make a statement in the defendant's own behalf and to present any information in mitigation of punishment.

Allocution originated in English criminal law at a time when defendants were not represented by counsel and were not competent witnesses on their own behalf. A.G. Barnett, Annotation, *Interrogation Before Sentence*, 96 ALR2d 1292 § 3 (1964). Allocution affords a defendant the opportunity to personally present to the court his or her defense or any mitigating information. *Id.* Because it may be the only opportunity for an accused to address the court, it carries great importance and its omission will ordinarily justify reversal. *See United States v. Cole*, 27 F.3d 996, 998 (4th Cir.1994).

The United States Supreme Court has supported the continued use of allocution while discussing Federal Criminal Rule 32(a)[13] in *Green v. United States*, 365 U.S. 301, 304, 81 S.Ct. 653, 655, 5 L.Ed.2d 670, 673 (1961). The Court observed that, although major changes have evolved in criminal procedure since the seventeenth century, there is no reason to limit a procedural rule to the circumstances under which it arose if reasons for the right it protects remain. The Court further commented that "[n]one of [the] modern innovations lessens the need for the defendant, personally, to have the opportunity to present to the court his plea in mitigation. The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." *Id.* In addition, the Court has recognized the difficulties faced by sentencing judges:

> [T]he imposition of sentence presents quite different considerations. There a judge usually moves within a large area of discretion and doubts.... It is a commonplace that no more difficult task confronts judges than the determination of punishment not fixed by statute. Even the most self-assured judge may well want to bring to his aid every consideration that counsel for the accused can appropriately urge.

*Carter v. Illinois*, 329 U.S. 173, 178, 67 S.Ct. 216, 220, 91 L.Ed. 172, 176 (1946).[14]

■ The record below reveals that neither Mr. Berrill nor his counsel were given the opportunity to address the court before sentencing. The record further reveals that counsel failed to object to the court's omission of defendant's right to allocution. The State, in its brief, admits that appellant was erroneously denied the opportunity to address the court. We commend the State's candor on this issue. "While confessions of error do not automatically entitle a party to a reversal, reversal is required when it can be ascertained that the errors confessed are supported by law. *State v. Young*, 166 W.Va. 309, 273 S.E.2d 592 (1980); *State v. Goff*, 159 W.Va. 348, 221 S.E.2d 891 (1976); *State v. Cokeley*, 159 W.Va. 664, 226 S.E.2d 40 (1976)." *State v. Tesack*, 181 W.Va. 422, 425, 383 S.E.2d 54, 57 (1989). We find, therefore, that the errors confessed by the State are clearly established by the law and the facts of this case. Where no objection to the denial of allocution was made at trial, the error is subject to review for plain error. *See United States v. Cole*, 27 F.3d 996, 998 (4th Cir.1994). We find plain error, in that there was an error, that was plain, and that affected Mr. Berrill's substantial rights and seriously affected the fairness, integrity, or

---

**13.** Rule 32(a), as it was stated at the time of the *Green* opinion, was similar to the rule in question, and read, in pertinent part: "Before imposing sentence the court shall afford the defendant an opportunity to make a statement in his own behalf and to present any information in mitigation of punishment." A defendant is currently afforded an opportunity to make a statement in mitigation of the sentence under section (c)(3)(C) of Rule 32.

**14.** In *Carter,* the defendant challenged his guilty plea on the basis that he was not represented by counsel at the time he entered the plea. Although defendant waived his right to counsel, he asserted that the fact that he was assigned counsel for the sentencing proceedings demonstrated that he should have had counsel at the time of his plea. The Supreme Court rejected this argument, as reasoned above.

public reputation of the judicial proceedings. Syl. pt. 7, *State v. Miller,* 194 W.Va. 3, 459 S.E.2d 114 (1995).

This Court has previously determined that Rule 32(a)(1) of the West Virginia Rules of Criminal Procedure, which is similar to the Magistrate Rule quoted above, "confers a right of allocution upon one who is about to be sentenced for a criminal offense." Syl. pt. 6, *State v. Holcomb,* 178 W.Va. 455, 360 S.E.2d 232 (1987). Similarly, we find that Rule 19 of the West Virginia Rules of Criminal Procedure for Magistrate Courts (1993) confers a right of allocution upon one who is about to be sentenced for a criminal offense. We note that Rule 19 is couched in mandatory language, directing that: "[B]efore sentencing the magistrate *shall ...*" invite the defendant to speak. " ' "The word 'shall' in the absence of language in the statute showing a contrary intent on the part of the legislature, should be afforded a mandatory connotation." Syl. pt. 2, *Terry v. Sencindiver,* 153 W.Va. 651, 171 S.E.2d 480 (1969).' Syl. pt. 5, *Rogers v. Hechler,* 176 W.Va. 713, 348 S.E.2d 299 (1986)." Syllabus point 3, *Ruble v. Office of Secretary of State,* 192 W.Va. 134, 451 S.E.2d 435 (1994). Clearly, the procedure of allowing the defendant and his counsel to speak in mitigation of sentence gives the sentencing authority an opportunity to review all of the circumstances surrounding an offense. We construe the direction of the rule as binding upon the magistrate courts and hold that in the circuit and magistrate courts of this state, the judge or magistrate shall, *sua sponte,* afford to any person about to be sentenced the right of allocution before passing sentence.

"The failure of the trial court to follow the proper procedures for sentencing does not affect the validity of the defendant's conviction. In similar situations, the Court has not reversed the conviction, but has remanded for resentencing. *See State v. Lawson,* 165 W.Va. 119, 267 S.E.2d 438 (1980); *State v. Bail,* 140 W.Va. 680, 88 S.E.2d 634 (1955); *State v. Self,* 130 W.Va. 515, 44 S.E.2d 582 (1947)." *State v. Thompson,* 176 W.Va. 300, 309, 342 S.E.2d 268, 277 (1986).

In this case, the defendant appears to have been a concerned citizen who unfortunately chose an inappropriate method of expressing a sincere point of view.[15] Although his conduct was unlawful, breached the peace, and raised legitimate concerns justifying prosecution, the conduct does not appear to be the sort of egregious or mean-spirited behavior for which a court might apply the full force of the law authorized under the applicable statutes. Accordingly, this case presents an excellent example of the need for the defendant, personally, to have the opportunity to "speak for himself." We urge the circuit court to listen with care to any reasonable allocution offered by the appellant.

For the reasons stated, the November 18, 1994 Order of the Circuit Court of Calhoun County is affirmed in so far as it affirms the convictions of the defendant before the Magistrate Court of Calhoun County and is reversed with respect to the imposition of sentence. The case is remanded to the Circuit Court of Calhoun County with instructions to resentence the defendant after affording him the right of allocution.

Affirmed in part; reversed in part; and remanded with directions.

---

15. Although we believe Mr. Berrill's point of view was sincere, we note that our opinion of his viewpoint is irrelevant to our analysis of the issues involved in this case.