Dear State Senator Weedn
¶ 0 You have asked for an Attorney General Opinion on the following question:
Does 21 O.S. 1301 (1991) regarding the wearing of masksand hoods apply to law enforcement officers, members of theOklahoma National Guard and firefighters as to clothing,equipment or other gear worn in the course of performing theirrespective duties?
¶ 1 The statute in question, which dates back to the Laws of 1923-24, provides:
 It shall be unlawful for any person in this state to wear a mask, hood or covering, which conceals the identity of the wearer; provided, this act shall not apply to the pranks of children on Halloween, to those going to, or from, or participating in masquerade parties, to those participating in any public parade or exhibition of an educational, religious or historical character, to those participating in any meeting of any organization within any building or enclosure wholly within and under the control of said organization, and to those participating in the parades or exhibitions of minstrel troupes, circuses or other amusements or dramatic shows. Any person, or persons, violating the provisions of this section of this act, shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not less than Fifty Dollars ($50.00) nor more than Five Hundred Dollars ($500.00), or by imprisonment in the county jail for a period of not exceeding one (1) year, or by both such fine and imprisonment.
21 O.S. 1301.
¶ 2 There are no appellate decisions in Oklahoma interpreting this statute. Of the reported cases located which involve anti-mask statutes, none involve law enforcement officers, firefighters or any military personnel as defendants. The only available judicial decisions interpreting anti-mask statutes are from other states.
¶ 3 The Oklahoma criminal statute prohibiting the wearing of hoods and masks appears to be in a league with other states' statutes referred to as "anti-mask" or "anti-klan" statutes. Other states' judicial opinions explain that these statutes were passed in many states[1] to curtail the harassment, intimidation and violence of racial and religious minorities by "hate" groups and secret societies whose members obscured their identities when conducting their activities. See State v.Berrill, 474 S.E.2d 508, n. 9 (W.Va. 1996); Daniels v. State,448 S.E.2d 185 (Ga. 1994).
¶ 4 We reason that Oklahoma's anti-mask statute shares a genesis similar to other state's antimask laws. The Oklahoma statute, dating back to 1923-1924, is part of an Act which also proscribes masked trespass, masked assaults, mailing threatening or intimidating letters, and also outlaws organizations which require members to take an oath in conflict with or repugnant to the constitutions of Oklahoma or the United States (Title 21O.S. 1302, 21 O.S. 1303, 21 O.S. 1304, 21 O.S. 1306,
respectively). The Tulsa race riot of 1921 is an historical fact which illustrates that there was considerable racial strife which erupted into violence in Oklahoma. Thirty-five city blocks were burned. Blacks and whites were killed as a result of one black man's arrest and a subsequent clash between blacks and whites over an anticipated lynching. Looking at Oklahoma's history and the surrounding statutory sections of the anti-mask statute, we can readily surmise what was the legislature's general intent in passing that law. The Oklahoma legislature intended to ban harassing and intimidating behaviors by groups and to curb racial violence which were apparent threats in Oklahoma in the early 1920's.
¶ 5 The first rule of statutory interpretation is to read the plain meaning into the text of the statute. See McNeill v. Cityof Tulsa, 953 P.2d 329, 331 (Okla. 1998); Ross v. Peters,846 P.2d 1107, 1112-13, n. 17 (Okla. 1993). The Oklahoma statute purports to prohibit "any person" from wearing a mask or hood which conceals his or her identity, with exceptions for religious, historical or educational activities, etc. Reading the Oklahoma statute absolutely literally would result in many seemingly innocuous acts being construed as criminal. For example, widows wearing veils, Muslim women wearing everyday traditional garb covering their faces, citizens wearing ski masks on cold winter days, brides wearing wedding veils, a doctor wearing a surgeon's mask, and a laborer wearing a dust mask for work, would all be committing criminal acts. Criminalizing such trivial innocent acts would certainly be an absurd result, an unlikely end intended by the Oklahoma Legislature. Statutory interpretations which result in absurdities are to be avoided.See Cox v. Dawson, 911 P.2d 272, 281 (Okla. 1996); Ross,846 P.2d at 1112.
¶ 6 One tenable interpretation of the Oklahoma statute's reference to "any person" is that it excludes any government representative while acting in the scope of his or her position (e.g., law officers, firefighters, soldiers). A recent opinion issued by the United States Court of Appeals for the Tenth Circuit yields strong support for this view. See United Statesv. Singleton, 165 F.3d 1297 (10th Cir. 1999). In Singleton, the court interpreted a federal criminal statute (18 U.S.C. 201(c)(2)) which prohibited "whoever" from giving or promising anything of value to a person in exchange for his or her testimony. An earlier panel of the Tenth Circuit reversed Singleton's conviction because the prosecuting attorney had offered the co-defendant leniency in exchange for truthful testimony. The earlier panel had viewed the prosecutor's plea agreement with the co-defendant as a criminal violation. However, sitting en banc, the court ruled that the Assistant United States Attorney was acting within the scope of his authority. When making his agreement with the co-defendant, he was virtually the alter ego of the United States exercising its sovereign power of prosecution. The court viewed it to be a "patently absurd" reading of the statute to hold that the Assistant United States Attorney violated the criminal law when coordinating a plea agreement with a defendant. "Whoever" did not include officials of the government.
¶ 7 Applying the principle of Singleton to your question, it seems absurd to conclude that the state intended to make itself and its alter egos, law enforcement personnel, firefighters and soldiers, subject to this criminal statute when they act as the sovereign state or as a governmental entity in the performance of their duties.
¶ 8 Next we turn to other states' legal opinions which interpret anti-mask statutes, where we find another rationale which may resolve your question. There are numerous decisions issued by state and federal courts addressing anti-mask statutes;[2] however, the overwhelming number of these cases discuss various constitutional issues or challenges under the First, Fifth and Fourteenth Amendments, or statutory civil rights. We do not address the question of the constitutionality of the Oklahoma statute since your question does not invite such analysis. You ask merely whether the statute is applicable under the circumstances you presented.
¶ 9 Few of the reported cases on anti-mask statutes actually discuss the interpretation of the anti-mask statutes. A line of three cases offers assistance to our analysis. See State v.Miller, 398 S.E.2d 547 (Ga. 1990); Daniels v. State,448 S.E.2d 185, 186 (Ga. 1994); and State v. Berrill,474 S.E.2d 508 (W.Va. 1996).
¶ 10 In State v. Miller, the defendant was arrested for wearing the traditional regalia of the Ku Klux Klan in a public place. Miller admitted his act but argued that the Georgia anti-mask statute criminalized innocent behavior and was therefore unconstitutionally vague and overbroad (in addition to violating the First and Fourteenth Amendments). The court, however, disagreed and upheld the statute, saying:
 Persons of common intelligence may readily appreciate maskwearing conduct that provokes a reasonable apprehension of intimidation, threats or impending violence in a given context. For example, a person wearing a ski-mask in mid-winter would not ordinarily warrant alarm, but a person wearing a ski-mask on a warm day and while entering a bank certainly would. . . . In our view, the statute distinguishes appropriately between mask-wearing that is intimidating, threatening or violent and mask-wearing for benign purposes.
Miller, 398 S.E.2d at 552, 553.
¶ 11 The court focused on the reason why the Georgia Legislature created its anti-mask statute: to protect its citizens from intimidation, violence and actual and implied threats, and "to assist law enforcement in apprehending criminals, and to restore confidence in law enforcement by removing any possible illusion of government complicity with masked vigilantes." Id. at 550.
¶ 12 The Miller case ruled that the intent of the mask-wearer to conceal his identity must be proved to sustain a conviction under the statute. See Miller, 398 S.E.2d at 552; see alsoDaniels v. State, 448 S.E.2d 185, 187 (Ga. 1994). The Miller
court stated that a maskwearer knows or reasonably should know that his conduct provokes a reasonable apprehension of intimidation, threats or violence. See Miller,398 S.E.2d at 552. The Court affirmed Miller's conviction under the anti-mask statute.
¶ 13 It is noteworthy that the Oklahoma anti-mask statute includes no express intent requirement in the text. The Oklahoma law merely states that any person wearing a hood or mask "which conceals the identity of the wearer" commits an unlawful act. A reasonable presumption is that a criminal intent requirement in Oklahoma's statute is implied as it was in Miller, and for conviction a prosecutor would have to present evidence that a maskwearer intended to conceal his or her identity.
¶ 14 For the question you presented, we should consider what facts may constitute an intent to conceal one's identify while wearing a mask or hood. You asked whether the statute could apply to law enforcement, firefighters or to soldiers in uniform who wear clothing or equipment while on duty. We can suppose that firefighters sometimes wear facial fire protective gear or oxygen masks; that law enforcement officers sometimes wear protective full body gear for bomb squad responses, or HAZMAT[3] face and body suits for drug raids, especially of illegal methamphetamine labs where poisonous and odorless gas is often present; that law enforcement officers may wear masks in the course of making exigent raids where resistance and flying debris is anticipated; and that soldiers performing as snipers wear masks for strategic military invisibility or wear facial dust masks when serving as rescue workers. To determine that these acts of wearing masks or other facial coverings are criminal would certainly seem to be a ridiculous and absurd result.
¶ 15 Another Georgia case illustrates what facts will not constitute proof of intent to conceal one's identity. SeeDaniels v. State, 448 S.E.2d 185 (Ga. 1994).
¶ 16 In Daniels, the appellant was convicted of violating Georgia's anti-mask statute. Daniels was disabled and supplemented his social security income by collecting and recycling aluminum cans. He would look through trash cans to find recyclable materials. On one occasion Daniels found a discarded football helmet and a green wrestling mask and put them on to entertain the neighborhood children playing in the street. A police officer observed Daniels with his helmet and mask on and noticed a girl's "uneasy" reaction to Daniels, then arrested him. Daniel testified that his intent was only to entertain the children. There was also evidence indicating that Daniels was known in the area, that the incident occurred in daylight and that Daniels made no effort to alter any other aspect of his appearance. The court reversed Daniels' conviction, finding Daniels did not intend to conceal his identity from the children. Further, the court stated that mask-wearing, even scary mask-wearing for the purpose of entertainment was "beyond the purview of the evil the Act is intended to prohibit, that is, ridding the state of mask-wearing would-be desperados and the like." Id. at 187.
¶ 17 A later case illustrates facts which constituted sufficient intent to conceal identity which sustained a criminal conviction. In State v. Berrill, 474 S.E.2d 508 (W.Va. 1996), the court sustained a conviction of an anti-mask statute, specifically finding that the concealment of Mr. Berrill's identity was not protected speech. Mr. Berrill arrived at a high school board meeting in a full devil costume, including a mask covering his face, as a protest of the school's devil mascot. At a pause during the proceedings, Mr. Berrill "pranced" about the room and spoke for several minutes. He explained to the assembled persons that he was the red devil and had come to thank the board for keeping the devil in the schools and keeping God out. He never revealed his true identify.
¶ 18 Mr. Berrill was convicted and challenged the anti-mask statute. The court considered a number of facts surrounding Mr. Berrill's performance in reaching its decision. A number of people in attendance were frightened by Mr. Berrill's conduct. Some thought he might be carrying a gun or become violent and others were afraid for the children present. Their fears and worries were heightened by the fact that there was only one exit to the school board meeting room. The people at the meeting never knew who Mr. Berrill was during his presentation. The court found a clear nexus between the state's interest and Mr. Berrill's activity, protecting its citizens from violence and from the fear and intimidation of being confronted by someone whom they could not identify. Id. at 514-15. Mr. Berrill's conviction was upheld.
 CONCLUSION
¶ 19 It is not unreasonable to conclude that the Oklahoma anti-mask statute was passed to prevent incidents of racial or religious intimidation or violence. Federal case law suggests that a statute which prohibits "whoever" or "any person" from performing certain actions does not incorporate persons who are acting as the state or a governmental entity in the course of their work. Reading Oklahoma's law as applying literally to any person would clearly yield absurd results and criminalize innocent behaviors.
¶ 20 As in Miller, we believe the Oklahoma anti-mask criminal statue implies that an intent to conceal one's identity must be shown to support a conviction. Law enforcement officers, firefighters and soldiers do not wear masks with the intention to conceal their personal identity. They wear masks or face coverings primarily for safety. The hypothetical situations in which we imagine law enforcement personnel, firefighters and soldiers wearing face coverings do not involve the kind of harassing circumstances addressed by the anti-mask law. Daniels
and Berrill offer us parameters of what is, and what is not an intentional act of concealment prohibited under an anti-mask statute. Daniels shows that concealing one's face with a genuine non-harassing intent is not the conduct which is made criminal under an anti-mask statute. Berrill shows that mask wearing which directly causes fear in observers is conduct that is within the realm of statutorily prohibited conduct. In our hypothetical mask-wearings, there would be no intent to conceal identity. Rather, the identity concealment is incidental to safety precautions taken by law enforcement, firefighters and soldiers. In addition, their underlying purpose in wearing face coverings would not be to harass, intimidate, threaten with racial or religious prejudice, or instill fear in the citizenry. Their intentions would be outside the purview of the anti-mask Oklahoma statute.
¶ 21 It is, therefore, the official Opinion of the AttorneyGeneral that:
Title 21 O.S. 1301 (1991) prohibiting the wearing of masksand hoods does not apply to law enforcement officers, members ofthe Oklahoma National Guard and firefighters as to clothing,equipment or other gear worn in the course of performing theirrespective duties.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA ALICIA CONNOLLY LOHR ASSISTANT ATTORNEY GENERAL
[1] Other jurisdictions with anti-mask statutes similar to Oklahoma's include: Alabama, California, Connecticut, Delaware, District of Columbia, Florida, Georgia, Louisiana, Michigan, Minnesota, New Mexico, New York, North Carolina, Tennessee, Virginia, West Virginia. See State v. Berrill, 474 S.E.2d 508,514, n. 9 (W.Va. 1996); Hernandez v. Superintendent,Fredericksburg-Rappahannock Joint Security Center,800 F. Supp. 1344, nn. 5, 6 (E.D. Va. 1992); Simoni, Stephen J., Note, "Whogoes there?" — Proposing a Model Anti-Mask Act, 61 FORDHAM L. Rev. 241, 242 n. 6 (1992).
[2] For a discussion of these, see generally, Trenkner, Thomas R., Annotation, Validity and Construction of State Statute orOrdinance Prohibiting Picketing, Parading, Demonstration, orAppearing in Public While Masked or Disguised, 2 A.L.R.4th 1241 (1996); Simoni, Stephen J., Note, "Who Goes There?" — Proposinga Model Anti-Mask Act, 61 FORDHAM L. Rev. 241 (1992).
[3] An abridgment of the environmental term, hazardous materials.